Taylor ROARK, Appellant,

v.

W. A. BOYLE et al.

Maude W. REESE, executrix of the last will and testament of Joe S. Rees, Appellant,

v.

W. A. BOYLE et al.

Theo R. FULLER, Appellant,

v.

W. A. BOYLE et al.

Nos. 23138–23140.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 1, 1969.

Decided Aug. 14, 1970.*

MacKinnon, Circuit Judge, concurred and filed opinion.

* Decided together with Collins v. United Mine Workers Welfare and Retirement Fund, 141 App.D.C. ——, 439 F.2d 494.

Mr. Julian H. Singman, Washington, D. C., with whom Mr. Orlin L. Livdahl, Jr., Washington, D. C., was on the brief, for appellants.

Mr. Harold H. Bacon, Washington, D. C., with whom Messrs. Welly K. Hopkins and Joseph T. McFadden, Washington, D. C., were on the brief, for appellees.

Messrs. David H. Marlin, Washington, D. C., and Jonathan Weiss, New York City, filed a brief on behalf of National Council of Senior Citizens as amicus curiae urging reversal.

Before WRIGHT, LEVENTHAL and MacKINNON, Circuit Judges.

LEVENTHAL, Circuit Judge:

This appeal brings before us again a litigation concerned with the validity of the eligibility requirements of the United Mine Workers of America Welfare and Retirement Fund of 1950, and

in particular the "signatory last employment" requirement. Appellees have determined that appellants are ineligible for pensions because their permanent retirement from the Bituminous Coal Industry was not "following regular employment * * * as an employee of an operator signatory to the National Bituminous Coal Wage Agreement of 1950, as amended." [1] This eligibility requirement, promulgated by the Trustees of the Fund, has been construed by them to mean that a pensioner's last employment in the coal industry must have been for a signatory employer. An employer "signatory" to the 1950 agreement, as amended, is one who has made the contributions prescribed by the agreement to the Fund. It is not disputed that the last employment in the coal industry, of each of the appellants, was for a non-signatory employer.

In an earlier appeal, Roark v. Lewis, 130 U.S.App.D.C. 360, 401 F.2d 425 (1968), we considered the issue of the validity of the signatory last employment requirement as construed. We emphasized the need for judicial circumspection to avoid second guessing the discretionary judgments of the Trustees and held that an eligibility requirement duly promulgated by the Trustees could be set aside only if found to be arbitrary and capricious. This court was concerned, however, that the last employer requirement as evolved by the Trustees was unreasonable, operating as it did to forfeit the pension of a man who worked most of his life for a signatory (or contributing) employer, merely because of a short period of non-contributing employment, and to grant a pension to a man who worked for a non-contributing employer most of his life, merely because of a relatively short 1-year period of work for a signatory employer immediately prior to retirement. We noted that a key purpose of the Fund was to pay benefits to the employees of contributing employers and found it difficult to see how the challenged requirement promoted that purpose. Accordingly we held that a prima facie case as to the unreasonableness of the requirement had been made out and we remanded "for a hearing at which the trustees may show what, if any, reasonable relationship exists between the purposes of the Fund and the requirement that an employee's last regular employment be with a signatory operator."

On remand additional facts relating to the circumstances surrounding appellants' non-signatory employment and the operation of the Fund were stipulated by the parties. Bulletin No. 1435, United States Department of Labor, Bureau of Labor Statistics, Digest of One Hundred Pension Plans Under Collective Bargaining (1964) was stipulated as an exhibit. Depositions of Josephine Roche, Director and a Trustee of the Fund, and Thomas F. Ryan, Jr., the Fund's Comptroller, were filed. On consideration of cross-motions for summary judgment, the district court granted the motion of appellee-Trustees and denied that of appellant-plaintiffs. We reverse.

In view of our earlier opinion, the issue before us now is whether the Trustees have advanced any reasonable justification for their last employer requirement in terms of the purposes of the Fund. In Part I below, we review the justifications offered by the Trustees and conclude that they do not provide a rational basis for the requirement they have evolved.

In Part II, we consider what are to be the consequences of the Trustees' failure to advance such a basis. We conclude that a "signatory last employment" requirement, i.e. a requirement that the applicant have retired from the bituminous coal industry "immediately following regular employment for a period

1. The applications of appellants Roark and Reese were subject to the eligibility requirements set forth in Resolution 57; that of appellant Fuller to those in Resolution 63. These resolutions, of the

Board of Trustees of the United Mine Workers of America Welfare and Retirement Fund, are set forth in pertinent part in the Appendix.

of at least one full year" as an employee of a signatory employer, may have a legitimate purpose, and may be established as a valid eligibility requirement if coupled with one or more other requirements conditioning eligibility for a full pension on a significant history of contributory employment. Consequently we do not lay down a rule forbidding every signatory last employment requirement.

We think the appropriate decree is one that affords the Trustees an opportunity to elect either to abandon the particular signatory last employment requirement before us, or to promulgate a new set of eligibility requirements that would establish a validating context for retention of the signatory last employment requirement.

In Part III we take up the question of relief to the particular plaintiffs in the instant case. We are of the view that even assuming the Trustees retain the signatory last employment requirement in a validating context, considerations touching on the nature of the judicial process impel us to conclude that the plaintiffs in the instant litigation are nonetheless entitled to a judgment that they were not lawfully disqualified by the requirement applied to them.

I. *Invalidity of the Particular Signatory Last Employment Requirement Maintained by the Trustees*

The Trustees rely on two explanations for the signatory last employment requirement. They assert that the requirement is necessary to preserve the integrity of the fund; and that the requirement is necessary to the validity of the Fund under § 302 of the Taft-Hartley Act, as amended by the Labor-Management Reporting and Disclosure Act of 1959.

Their position is based in large part on the history of the signatory last employment requirement which Miss Roche recounted in her deposition. She explained that the eligibility requirements for the present Fund were built on those of the predecessor 1947 Fund which required completion of 20 years' employ-

ment in the coal industry and retirement from the coal industry after May 29, 1946. When the present Fund was established in 1950, a requirement of one year's employment in the coal industry immediately preceding retirement was added in order to prevent large numbers of miners who had been long separated from the industry from establishing retirement after May 29, 1946 by returning for temporary employment of, say a few months or even weeks.

With respect to the requirement that this last employment be with a signatory operator, Miss Roche testified that this feature of the last employment requirement was rooted in an opinion rendered by counsel to the Trustees that the one year of service immediately preceding retirement had to be for a signatory operator in order to comply with the requirements of the Taft-Hartley Act. She was asked if since the inception of the 1950 Fund consideration had been given to changing the requirement that the last employment be with a signatory. She answered, "No, certainly not, because we are committed to it under the Trust Agreement and by counsel. This is one of the things that is required by the Taft-Hartley Act." (SJA 39)

In the *Roark* case, the District Judge found these explanations constituted a reasonable justification for the signatory last employment requirement.

Similar explanations were advanced to and rejected by the District Court in Collins v. United Mine Workers Welfare and Retirement Fund, a case which also challenges the validity of the signatory last employment requirement and which we decide today together with the instant appeal. In that case the court held the signatory last employment requirement invalid. The court said:

In the opinion of this Court, the foregoing explanation is not adequate. In order to prevent possible frauds and in order to confine the benefits of the Fund to retired employees whose labors brought about contributions to the Fund, all that is necessary is to require that the miner should

have worked for a specified minimum period in signatory coal mines. To exact a requirement that irrespective of the number of years he may have been employed in such mines, he must have done likewise during the very last year of his employment in the coal industry, is unreasonable, arbitrary and capricious. The unfairness of the requirement is patent in respect to a person, such as this plaintiff, who for many years worked in a signatory coal mine, but during the last year of his work in the industry was constrained by circumstances to accept employment in a non-union mine. On the other hand, a person could have worked during his entire career in non-union mines and yet receive a pension if he managed to secure employment in a union mine for a single year immediately preceding his retirement although his participation in the creation of the Fund would be negligible. Such results are unfair and unreasonable and border on the absurd.

Although we agree with the ultimate conclusion of the District Court in *Collins* that the present signatory last employment requirement cannot be sustained, we think the general problem of such requirements requires additional perspective and analysis.

■ The goals underlying the Trustees' explanation for their signatory last employer requirement are not objectionable. Of course the Trustees must set eligibility requirements which are consistent with the financial integrity of the Fund. Moreover, we recognize that the fact that this Fund has established a flat pension plan has an impact on eligibility requirements. Although a plan that varies the amount of pension with contributory input, e. g. the length of time that a pensioner has worked in contributory employment, has obvious equity, we cannot say that the law condemns outright, as inherently unreasonable, a flat pension plan that pays an equal amount to all pensioners meeting reasonable eligibility requirements. Under a flat pension system if eligibility requirements become too liberal, the amount of the benefits each pensioner receives will fall to an insubstantial amount that dis-serves the primary purpose of a pension plan.

■ We also agree that the Taft-Hartley Act requires that each pensioner have some history of contributory employment. Section 302 of that Act, 29 U.S.C. § 186, originated as an anti-bribery statute designed to restrict payments by employers to unions and union officials. Exemptions are provided, including an exemption, set forth in paragraph (c) (5), for payments to trust funds, administered by representatives of employers and employees and neutral persons, established for the benefit of the employees, and providing e. g. for "pensions on retirement or death of employees." [2]

2. "(5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided*, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to

Congress obviously contemplated payments to union welfare funds would be made by employers for the benefit of their employees, in the expectation that such payments further legitimate interests of the employers. If an individual employer establishes an individual plan for the "benefit of the employees of such employer" his legitimate interest may well lie in confining retirement benefits to his employees. The same principle applies when a group of employers pool their plans and funds. The group of employers who contribute to the Fund in the instant litigation would have no interest in payment of benefits to persons who at no time had been employed by one of the employers in the group.

■ In the setting of our prior ruling we conclude that the Trustees have failed to show a rational basis for the signatory last employment requirement, in its present context, as a reasonable means of implementing these valid goals. In this regard, the Trustees' explanations are inadequate in three areas.

First, we consider the Trustees' broad reliance on the historical explanations for the signatory last employment requirement. The short answer is that the passage of time has rendered these explanations obsolete. These historical justifications for the requirement are closely tied to the organizational and start-up problems the Fund faced at the time the requirement was first instituted. In dealing with a large pool of miners who had retired before the fund was created and who in the late 1940's were returning to the mines for brief periods in order to qualify for pensions, some rule similar to the one before us was appropriate to avoiding condemnation as being arbitrary or capricious.[3] We have no quarrel with the District Court's finding that there was a "rational nexus" between the requirement when established and the purpose of the Fund. Our difficulty arises from his assumption that because it was reasonable when established, and has been in effect for a number of years, it has been appropriately continued into the present and may be appropriately continued into the future—apparently in the thought that the alternative would be chaos in administration obliterating the purpose of the Fund.

In this case we are concerned with miners who retired in 1959, 1961 and 1965. During this period, any danger that a miner who had retired prior to May 29, 1946 would qualify for a pension through temporary employment was effectively eliminated by the Fund's separate requirement that a pensioner have worked in the coal industry 20 out of the 30 years immediately preceding application. In 1965 the "20 out of 30" requirement was eased and changed to a retirement of 20 years' service for miners retiring after February 1, 1965. By this time there was little danger of return to the coal industry, even for temporary employment, of miners who retired prior to 1946 after 20 years of service.

Second, we consider the Trustees' explanation that their eligibility require-

agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities."

3. The force of this explanation is, however, undercut by the failure of the Trustees to give publicity to the information that they have construed "following regular employment" with a signatory to mean immediately following one year's signatory employment. Obviously publicity would have helped to give the Trustees' interpretation the desired deterrent effect.

ment was responsive to statutory requirements.

Assuming that the requirement before us was sustainable when instituted, in view of the start-up problems encountered by a pension fund during the period when applicants do not have significant contribution histories, we are now at a time when significant contribution histories are broadly available (in appellants' cases they range from 9 to 15 years) and eligibility requirements based on such histories can be framed so as to avoid destructive dilution of pensions. Similarly, before contribution histories were available it may have been reasonable to fulfill the § 302 requirement that pensioners have worked in contributory employment by merely requiring that the last year's employment be for a contributing employer. But now it becomes possible more nearly to fulfill the spirit of the Taft-Hartley proviso by gearing eligibility for a full pension to a condition of substantial contributory employment.

The Trustees did not initiate review of their signatory last employment requirement in light of the changing circumstances just discussed. Nor did they even indicate a readiness to undertake such review. Moreover, this provision has not been taken as immutable because of significant considerations within the particular expertise of the tripartite Trustees. Rather it is apparent that a requirement whose historical justification has been undercut by the passage of time has been transmuted into a provision the Trustees believe sacrosanct because of legal requirements of the Taft-Hartley Act.

While there is room for a court to give serious consideration to an interpreta-

tion of a statute advanced by the representatives of those directly affected by the statute's operation,[4] we can find no warrant for the notion that the Taft-Hartley Act requires or even prefers the particular provision in issue here. As noted above, the purpose of § 302 would be more fully carried out by the use of eligibility requirements geared to the applicant's entire contribution histories.

Finally, the Trustees' explanations fall short of providing a rational basis for their signatory last employment requirement. What the Trustees have done is to advance a reason for requiring a period of *regular* industry employment *immediately preceding* retirement and another reason for requiring that a pensioner have a period of contributory employment at some time. These separate explanations do not establish a justification for a joint requirement of contributory employment immediately preceding retirement. While we think such a requirement may have a valid justification, as appears below, it rests on considerations different from, though not entirely unrelated to, those developed by the Trustees in this record.

Apart from these inadequacies in the Trustees' justification for the requirement of signatory last employment, the Trustees have failed to explain why it is reasonable to award a pension to a man who has worked only one year in contributory employment and to deny one to a man who has worked 19 out of his 20 years in the coal industry in contributory employment.

The Trustees assert that in practice these extreme examples rarely occur. This may be so.[5] The District Court also considered that a rule liberal in its intent should not be imperiled because of

---

4. Cf. Citizens for Allegan County, Inc. v. FPC, 134 U.S.App.D.C. 229, 414 F.2d 1125 (1969).

5. The coal industry is one of declining employment and there is no assurance that a miner who seeks non-contributory employment within the industry will be able to find it.

Appellees rely on the fact, duly stipulated, that the total number of pension applications acted upon during the period

January 1954 through December 1964 resulted in 54,934 pensions authorized and 7,579 denied, only 312 of which were denied because of failure to prove last bituminous coal industry employment for a signatory operator. But, of course, there is no way of knowing in how many cases applications were never filed because the persons were informed they did not qualify in view of the last signatory employment requirement.

problems of "application to a few scattered employees." It is of course true that every classification runs into a problem of drawing the line that has some element of the arbitrary, using the term "arbitrary" in a sense that is wholly unobjectionable, and quite different from the meaning invoked for situations where selection is wayward and without the compass of a reasonable standard. Even random selection, plainly arbitrary in a benign sense of the term, may be reasonable at least if the principle is disclosed in advance.[6] But the difficulty that confronts us here is more pervasive. The examples we have noted seem to us to be symptomatic of the condition that the way in which the rule is drawn does not have a reasonable relationship to the valid purpose which can be served by some requirement of signatory last employment. This proposition will be developed in Part II of the opinion. We interject here the observation that where a rule is infirm in its essential thrust, it is more appropriate for a court to take into account the fact that the results of the rule's application may be harsh.

The signatory last employment requirement as presented to us on this record, developed on a historical basis no longer pertinent, and maintained in an inequitable context, must stand condemned as being arbitrary in the sense of being legally objectionable, without a rational basis, and cannot be sustained.

## II. *Considerations Permitting a Valid Approach to Signatory Last Employment Requirement*

We turn now to the question of what course may be open to the Trustees in view of the conclusions of invalidity reached in Part I, and in particular to the question of whether a requirement of signatory last employment can be a valid part of a set of eligibility requirements.

As a matter of history and tradition retirement pensions were initially re-garded as the responsibility of the person employing the retiring employee. It is not a departure from either custom or practice for an employer to refuse to contribute to the pension of a person who prior to retirement age either quit or was discharged due to a general reduction in force. This would manifestly be supportable if the employee left to work for a competitor. The result is the same even if the employee could have retired altogether and qualified for a pension, so long as he chooses not to retire, perhaps because he rejects the limitations governing those who retire.

What underlies this approach to the giving of pensions is the concept of a pension as a reward for long-time service and loyalty to the employer. This is more than the sentiment of a gold watch. The employer certainly has a manifest interest in inducing seasoned and experienced workers to stay with the employer during their productive years rather than leaving for other employment.

Other concepts have been infused into pension plans as these have become demanded by employees, and made the subject of bargaining by their union representatives. Increasingly the employer's pension contribution is seen as quasi-salary, a portion of income which the employee, acting through his union, chooses to have deferred so as to provide for or supplement retirement income. Such pension plans may go so far as to give, to a greater or less degree depending on the specific terms of the plan, a vested right to the pension credits accumulated during a period of employment with a contributing employer. Employers participating in a pension plan of this type obtain the cooperation of their current employees by contributing to their pensions even though at retirement age the employee may have gone to work for another. A vested pension plan has the feature of portability, that is, the employee carries his pension credits from one job to another. In the

---

6. *See* examples cited in Star TV v. FCC, 135 U.S.App.D.C. 71, 416 F.2d 1086, 1095, n. 18, cert. denied 396 U.S. 888, 90 S.Ct. 178, 24 L.Ed.2d 163 (1969) (dissenting opinion).

broadest sense it promotes mobility of labor to areas and operations of greatest demand.

In 1968 the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare held hearings on proposed bills that would, inter alia, have required that pension plans make a minimum provision for the vesting of pension credits. The bill supported by the Department of Labor would have required vesting at least to the extent that an employee could not be deprived of some pension entitlement after 10 years of continuous service after the age of 25. A representative of the Department of Labor testifying before the cognizant subcommittee noted the conclusion of the President's Committee on Corporate Pension Funds and Other Private Retirement and Welfare Programs that:

> Without vesting, a worker displaced after long years of service is denied all of his accrued pension protection. A worker in a similar position who voluntarily changes his employment has to forfeit his right to a future pension. Both circumstances are charged with inequity.

He further informed the subcommittee, however, that a vesting provision was lacking in almost one-third of all pension plans and that in many others vesting is dependent upon the individual's meeting overly restrictive age, service or other restrictions.

Others opposed the provision for compulsory vesting either in whole or in part. The Chairman of the Employee Benefits Committee, National Association of Manufacturers, stated that although NAM endorsed the concept of vesting, it was strongly opposed to compulsory requirements for the reasons, among others, that the great majority of plans represented the voluntary negotiation and agreement between management and labor, and that the vesting standard proposed by the Government failed to take into account the start-up problems which a pension fund encounters in its early years. His statement also asserted that although more

than seventy percent of the single employer pension plans provided for vesting, less than thirty percent of the multi-employer plans contained such vesting provision.

A representative of the AFL-CIO stated the position of his organization to be in favor of a vesting requirement as to single employer plans but opposed to any vesting requirement for multi-employer plans. He noted that the chief reason to require vesting was to assure the portability of pension credits, and that in the case of a multi-employer plan a substantial degree of portability was already available by virtue of the employee's ability to transfer to a large number of (participating) employers without forfeiting his pension rights.

None of the various proposals for a vesting requirement were enacted into law. The 1968 Hearings make clear that even those who supported a vesting requirement understood that existing law permitted the establishment and continuance of pension plans that did not provide for vesting, and conditioned eligibility on employment with a contributing employer at the time of retirement. We share this view. The purpose of § 302, to obviate possibilities of bribery yet permit open employer-employee agreements for pension plans, is furthered when the union welfare plan to which the employer contributes is the kind of plan for the benefit of employees which the employer might himself have established in his own economic interest.

Indeed the object of rewarding employer loyalty which underlies the nonvested pension has an obvious importance in the context of a pension fund, like that of the United Mine Workers, whose revenue is tied to the revenues of the participating employers. Employers signatory to the National Coal Wage Agreement pay into the United Mine Workers Welfare and Retirement Fund forty cents per ton of coal produced. Thus the amount available for pensions depends in part on keeping contributing employers competitive with non-partici-

pating employers who do not bear a pension contribution to the Fund as a cost of production. The last employment requirement does have a meaningful bearing on the survival of the participating employer since it prevents non-contributing employers who made no pension contribution from getting the benefit of miners who may have persisted in the industry and acquired experience in reliance on the retirement pensions. A trained and reasonably contented labor supply is an asset to an employer, secured in part at least through the cost of appropriate pension plans, and there is no reason why the contributing employer should be required to make this asset available to non-contributing employees who incur no part of the cost.

This kind of realistic consideration is potent, at least for an industry like the bitumious coal industry that has been characterized in recent years by both markedly declining employment rolls overall and intense competition between organized and unorganized sectors.[7] Indeed the data in footnote 7 reveal that employment has declined more sharply in the organized sector of the industry. The necessities of both signatory employers and their employees make it reasonable to deny pensions even to employees like appellants whose termination of signatory employment was not of their own choosing.[8]

We cannot say it would be arbitrary for the Fund to insist on loyalty to contributing employers even to the point of forcing a miner not yet old enough to qualify for a pension to keep alive his expectancy of a pension upon attaining the designated age by leaving the coal industry. The Fund would have permitted such an employee to serve meanwhile in another industry, and yet qualify at the designated age, because his retirement from the coal industry would have followed signatory employment. The other industry might have been less welcome employment, but this could have been reasonably required in the balancing of considerations rather than give him the option of offering himself for employment to a non-contributing coal mine operator.

7. An exhibit in the record by stipulation sets forth the following data: [Exhibit F]

EMPLOYEES BITUMINOUS COAL INDUSTRY
(United States)

|  | Total | Union | Non-Union |
|---|---|---|---|
| 1950 | 415,582 | 321,245 | 94,337 |
| 1951 | 372,897 | 290,114 | 82,783 |
| 1952 | 335,217 | 266,833 | 68,384 |
| 1953 | 293,106 | 232,726 | 60,380 |
| 1954 | 227,397 | 175,778 | 51,619 |
| 1955 | 225,093 | 170,170 | 54,923 |
| 1956 | 228,163 | 175,686 | 52,477 |
| 1957 | 228,635 | 180,164 | 48,471 |
| 1958 | 197,402 | 155,948 | 41,454 |
| 1959 | 179,636 | 140,475 | 39,161 |
| 1960 | 169,400 | 129,422 | 39,978 |
| 1961 | 150,474 | 112,856 | 37,618 |
| 1962 | 143,822 | 104,127 | 39,695 |
| 1963 | 141,646 | 103,402 | 38,244 |
| 1964 | 128,698 | 95,494 | 33,204 |

8. It is stipulated that appellants' separation from signatory coal industry employment was not voluntary, and that after separation from their substantial signatory employment they were in effect unable to find signatory employment in the area of their homes or contingent thereto in eastern Kentucky.

In at least one of the cases before us it appears from the record that the miner (Fuller) could have received a pension by retiring from the coal industry when his last signatory employer went out of business in 1963, rather than accepting non-signatory employment. In that situation the pension may realistically be considered as awarded in part for his forbearance from non-signatory employment. Our law recognizes the validity in some situations of a reasonable covenant not to compete. Restatement, Contracts, §§ 515, 516. Nor is this reasonableness undercut by the possibility that for some of the employees the pension consideration could not mature until they passed some years intervening prior to the specified age employed in other industries, even perhaps moving to another area, or even perhaps, unemployed.[9] Such a choice is not easy, but it is not irrational. We do not consider that a requirement of signatory last employment can be condemned as inherently arbitrary or unreasonable.

What is arbitrary, however, is a plan that puts a miner, leaving signatory employment through no fault of his own, to such a hard choice, all in the interest of employer loyalty and economic survival of a pension system, when the plan has not at least taken the step of furthering both these interests with an eligibility condition requiring substantial contributory employment. In a plan with flat equal pensions, eligibility requirements rationally calculated to reward employer loyalty cannot depend on the single fact of employment by a contributing employer during the year immediately preceding retirement. They must also focus a significant period of contributory employment.

This defect mars the eligibility requirements applied to deny a pension to appellants. The Trustees' contention that the signatory last employment requirement is a rational "minimum" requirement of contributory employment is not persuasive. It is a strange "minimum" that can be satisfied by someone who has worked one year for a contributing employer and yet be deemed unsatisfied by a man who has worked for contributing employers for 19 of his 20 years in the coal industry.

The use of a one-year signatory last employment as a sole test of contributory employment, without any other requirements concerning the extent of contributory employment prior to the last year preceding retirement, is not reasonably related to the purpose which underlies § 302. That is not the kind of plan which the employer might have established for himself, except perhaps for the initial start-up period. While an employer may condition pension eligibility on status in his employ at the time of retirement, the Trustees have not suggested that it is also the practice for an employer to make a flat equal pension available to one who came into his employ only during the year immediately preceding retirement. Nor is such a pension reasonable from the viewpoint of the employees as a class.

This is borne out by the Digest of 100 Selected Pension Plans under Collective Bargaining, Labor Bulletin No. 1435, which by stipulation was made a part of the record. A number of these plans, and a majority of the multi-employer plans, contain a requirement of signatory last employment. All but a few, however, require a period of contributory employment in excess of five years, and a period of ten or more years is commonly used. Thus while these plans do put the employee to the choice between his pension rights and offering himself to a non-contributing employer, they do so in the context of requirements which call for a significant period of contributory employment and thus are meaningfully calculated to reward loyalty to the employer.

9. We are not required on this record to consider the question that might arise if the employee could show he had absolutely no other source of income if he rejected non-signatory employment because, say, he would have rendered himself ineligible for unemployment insurance and welfare benefits.

In view of the above, we conclude that a requirement of signatory last employment can be a valid eligibility requirement only if it is in context of a plan that conditions eligibility on a period of contributory employment that is of sufficiently significant duration to warrant eligibility for a flat pension. A period less than five years would manifestly not be sufficient under this standard. Eligibility provisions may specify that this significant period of contributory employment fall immediately preceding retirement, or may recognize the period no matter when it occurs. This is a question whose resolution is within the discretion of the Trustees, as of course is the question of whether a requirement of signatory last employment should be retained at all. Once the pension plan has been shown to be one which in fact operates to reward meaningful loyalty to contributory employers, the Trustees have broad discretion to determine how far the eligibility provisions must go to achieve that purpose. All we hold here is that they must lay in the eligibility provisions a reasonable predicate of required contributory employment before they resort to the use of forfeitures as a means of preserving the fund for the benefit of contributors.

## III

There remains the question of relief to the parties in the cases before us and the impact of our decision on those who have heretofore failed to qualify for a pension because of the signatory last employment requirement.

■ In view of our conclusion that, though the particular signatory last employment requirement before us here cannot be sustained, such a requirement is not *per se* arbitrary and invalid, the Trustees are not prohibited by our decision from establishing valid eligibility requirements possibly including a requirement of signatory last employment. They have discretion to make these requirements wholly prospective. But we think they may also have discretion to make their amended regulation retrospective, in the sense of being applicable to applications hereafter filed even though they relate to past retirements. This kind of retroactive application would serve to validate for past retirements a signatory last employment which was, after all, valid when originally issued, and which became invalid by virtue of gradually changing circumstances. There is more reasonable and hence legitimate scope for retrospective application which operates as a validation for the past of this kind of trustee action than would be available, for example, to a wholly new concept which was announced for retrospective application. Similarly we think such provisions may be made applicable to applications heretofore rejected and subsequently presented for reconsideration.

Perspective for our ruling countenancing a partially retroactive application of the signatory last employment requirement as properly amended hereafter can be gained by looking at this as in effect the equivalent of withholding completely retroactive effect from our ruling declaring the requirement invalid in its present setting. The case before us sounds in equity, which fashions its relief in the light of overall public interest,[10] and the public interest may be furthered by withholding completely retroactive effect from a ruling declaring the invalidity of an administrative regulation.[11] This kind of retroactive treatment is not dissimilar to that accorded by the Supreme Court in a number of instances to avoid chaos due to newly announced criteria.[12]

10. Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789 (1937).

11. Blair v. Freeman, 125 U.S.App.D.C. 207, 217, 370 F.2d 229, 239 (1966).

12. Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Tehan v.

As to the plaintiffs-appellants in the cases before us, however, it is necessary to consider whether provision for review of their application under revised eligibility standards sufficiently preserves their personal stake in the outcome—that personal stake needed "to assure that concrete adverseness which sharpens the presentation of issues on which the court so largely depends for illumination" of difficult and far reaching questions. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). We conclude that relief to the parties before us should not be limited to reconsideration of their applications under revised eligibility requirements. Should the Trustees elect to retain the signatory last employment requirement in a validating context, the miners before us will receive no benefit whatever from the fact that they and their counsel have undertaken the substantial burden of the litigation required to demonstrate the present requirement to be arbitrary and invalid. We think that they are entitled to the benefit of that conclusion.[13]

Accordingly, Roark, Fuller and Reese are entitled to a declaration that the signatory last employment requirement is invalid as applied to them and that they are entitled to a pension if they met the other eligibility requirements in effect at the time their pension applications were filed. The case is remanded to the District Court for the entry of judgment accordingly.

So ordered.

## APPENDIX

### RESOLUTION NO. 57

BE IT RESOLVED, that Paragraphs I C and III B. 2 of Resolution No. 56 be and they are hereby amended to read as follows:

\*   \*   \*   \*   \*   \*

### I. ELIGIBILITY

C. Permanently retired from and ceased work in the Bituminous Coal Industry after May 28, 1946, following regular employment in a classified job, described in Paragraph B, 1, hereof, as an employee of an operator signatory to the National Bituminous Coal Wage Agreement of 1950, as Amended, and having been regularly employed in a classified job in the Coal Industry immediately preceding May 29, 1946; providing that, if he had retired from or ceased working in a classified job in the Bituminous Coal Industry prior to May 29, 1946, he shall be eligible for a pension only upon the completion of twenty (20) years' service in the Bituminous Coal Industry subsequent to May 28, 1946, and meets the other requirements of eligibility as contained in Paragraphs A and B and their subsections.

\*   \*   \*   \*   \*   \*

### RESOLUTION NO. 63

SEVENTY-EIGHTH MEETING OF THE BOARD OF TRUSTEES OF THE UNITED MINE WORKERS OF AMERICA WELFARE AND RETIREMENT FUND OF 1950, JANUARY 4, 1965

\*   \*   \*   \*   \*   \*

### I. ELIGIBILITY

A. An applicant who subsequent to February 1, 1965 permanently ceases work in the bituminous coal industry as

United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

13. In holding that its prospective ruling in Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), would be applied to the parties in the cases announcing the rule the Supreme Court said: "Sound policies of decision-making, rooted in the command of Article III of the Constitution that we resolve issues solely in concrete cases or controversies, and in the possible effect upon the incentive of counsel to advance contentions requiring a change in the law, militate against denying Wade and Gilbert the benefit of today's decisions." Stovall v. Denno, 388 U.S. 293, 301, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967) (footnotes omitted).

an employee of an employer signatory to the National Bituminous Coal Wage Agreement of 1950, as amended, shall be eligible for a pension if he has:

1. Attained the age of fifty-five (55) years or over at the date of his application for pension.

2. Completed twenty (20) years' service in the coal industry in the United States, as described in paragraph II A hereof.

3. Permanently ceased work in the coal industry immediately following regular employment for a period of at least one (1) full year as an employee in a classified job for an employer signatory to the National Bituminous Coal Wage Agreement, as defined in paragraphs II B hereof.

B. An applicant who, prior to February 1, 1965, had permanently ceased work in the bituminous coal industry, as an employee of an employer signatory to the National Bituminous Coal Wage Agreement of 1950, as amended, shall be eligible for a pension if he has:

1. Attained the age of fifty-five (55) years or over at the date of his application for pension.

2. Completed twenty (20) years' service in the coal industry as described in paragraph II A hereof, in the United States, within the thirty (30) years' period immediately preceding the date his application for pension is received at the office of the Trust Fund.

3. Permanently ceased work in the bituminous coal industry after May 28, 1946, following regular employment as an employee in a classified job for an employer signatory to the National Bituminous Coal Wage Agreement, and having been regularly employed in a classified job in the coal industry immediately preceding May 29, 1946.

C. An applicant who could have qualified for a pension under paragraph I B hereof, had he not worked beyond February 1, 1965, or an applicant who at any time after February 1, 1965, could have permanently ceased work and qualified for a pension under Paragraph I A hereof, at age fifty-five (55) or over but continued to work in the coal industry, shall not be required to work one (1) full year immediately preceding permanent cessation of work so long as his only subsequent employment in the coal industry is as an employee in a classified job for an employer signatory to the National Bituminous Coal Wage Agreement.

\* \* \* \* \* \*

MacKINNON, Circuit Judge (concurring):

To the discussion in our opinion drafted by Judge LEVENTHAL, *supra,* of last signatory employment requirements in connection with other eligibility requirements I merely wish to point out that while such provisions may not be illegal because of ameliorating provisions in certain pension plans, in other plans where they cause inequitable forfeitures, they may operate as an instrument of great inequity and oppression to some workers whose labor has caused very substantial contributions to be made to the fund. It seems to me that a mature pension fund drafted in the interests of the workers would base benefits chiefly on contributory employment and would provide for some partial vesting after substantial periods of contributory employment. It is recognized that the establishment of such a plan might require gradual changes over a period of years but it seems that it is an objective devoutly to be wished.