Stephen PETE on behalf of himself and all other similarly situated Plaintiffs, Plaintiffs,

v.

UNITED MINE WORKERS OF AMERICA WELFARE AND RETIREMENT FUND OF 1950 et al., Defendants.

Civ. A. No. 1953-69.

United States District Court, District of Columbia.

Jan. 8, 1973.

Louis Rabil, Washington, D. C., for class plaintiffs.

Julian Singman, Washington, D. C., for intervenors.

Joseph H. Newlin, Washington, D. C., for plaintiff Roy.

Joseph A. Rafferty, Jr., Harold H. Bacon, Washington, D. C., for defendants.

## OPINION

WILLIAM B. JONES, District Judge.

Plaintiffs in this class action are retired miners who have been refused pension benefits by the defendant Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950. Plaintiffs' applications for pension benefits were denied on the ground that their permanent retirement from the coal industry did not occur immediately "following regular employment . . . as an employee of an operator signatory to the National Bituminous Coal Wage Agreement of 1950, As Amended." [1]

Plaintiffs' Statement of Material Facts as to Which There Is No Genuine Dispute, submitted in accord with Local Rule 9(h), does not go beyond the facts stated in the preceding paragraph. Defendants have not filed a counterstatement under Local Rule 9(h), nor have they in any other way contested the facts stated above. The Court finds therefore that there are no material facts genuinely in dispute and that summary judgment is appropriate at this juncture.

---

1. Resolution 56, I., C. of the Board of Trustees of the United Mine Workers of America Welfare and Retirement Fund, April 11, 1960. Plaintiffs' applications for benefits were subject to the eligibility requirements of Resolution 56, as amended by Resolution 57, September 27, 1960, the resolutions in effect when plaintiffs submitted their applications.

"Signatory" employers are those coal operators and associations which signed the 1950 Agreement and agreed to contribute to the Retirement Fund a stipulated price per ton of coal mined.

The term "regular employment" is not specifically defined in Resolutions 56 or 57, nor in subsequent Resolutions 63, 83, and 89. In Roark v. Boyle, 141 U.S.App. D.C. 390, 439 F.2d 497 (1970), the Court stated that the Trustees "have construed 'following regular employment' with a signatory to mean immediately following one year's signatory employment." 439 F.2d at 502 n. 3.

All members of the class of plaintiffs in this action retired from the coal industry prior to February 1, 1965. Those who retired after that date are subject to an express requirement of one full year's signatory employment immediately preceding retirement in order to qualify for benefits from the Fund, as provided in Resolutions 63, 83, and 89.

■ The Trust Fund in question here was established by the National Bituminous Coal Wage Agreement of 1950, pursuant to 29 U.S.C. § 186(c)(5) (1970). The 1950 Agreement gives to the Trustees of the Fund full authority with respect to questions of coverage and eligibility for benefits. Consequently, the scope of court review of the Trustees' actions has been defined as one of determining whether their action in any given instance has been arbitrary or capricious.[2]

The Court in Roark v. Lewis, *supra* note 2, and again in Roark v. Boyle, *supra* note 1, examined the Trustees' requirement of signatory employment and held that such a condition of eligibility,

. . . may have a legitimate purpose, and may be established as a valid eligibility requirement if coupled with one or more other requirements conditioning eligibility for a full pension on a significant history of contributory employment. Consequently, we do not lay down a rule forbidding every signatory last employment requirement. 439 F.2d at 500.[3]

But the Court struck down the requirement of signatory employment in the last year before retirement unrelated to any other history of signatory employment, holding that such a requirement was irrational[4] and that refusal of benefits on that ground alone was arbitrary and capricious.

The Court suggested that the Trustees might develop a validating context for a requirement of signatory last employment and indicated that a "period of less than five years would manifestly not be sufficient" to establish a significant history of signatory employment warranting eligibility for a flat pension. 439 F.2d at 508. The Court stated that any validating context that might be adopted by the Trustees could be applied wholly prospectively or retroactively, both as to applications based on past retirements and filed after the *Roark* decision and applications filed and denied before *Roark* and subsequently presented for reconsideration.

As a consequence of its decision that a signatory employment requirement could be situated in a validating context by the Trustees and applied retroactively, the Court declined to make its own ruling retroactive and granted relief only to the plaintiffs in that case. The Court concluded that,

. . . relief to the parties before us should not be limited to reconsideration of their applications under revised eligibility requirements. Should the Trustees elect to retain the signatory last employment requirement in a validating context, the miners before us will receive no benefit whatever from the fact that they and their counsel have undertaken the substantial burden of the litigation required

2. See, e. g., Roark v. Lewis, 130 U.S.App. D.C. 360, 401 F.2d 425 (1968) ; Kosty v. Lewis, 115 U.S.App.D.C. 343, 319 F.2d 744, cert. den. 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1963).

3. The rationale for recognizing a significant history of signatory employment as a valid condition for receiving benefits from the Fund is presented in *Roark, supra,* 439 F. 2d at 505–507. In summary, a requirement of signatory employment can be defended on the ground that it encourages seasoned employees to remain with signatory employers who pay into the Fund a stipulated price per ton of coal mined. If such experienced employees could qualify for full pension benefits with little or no history of signatory employment, they would draw benefits on the

sweat of employees of signatory employers and at the cost of such employers who would be at a competitive disadvantage with non-signatory, non-contributing employers in the quest for skilled mining labor.

4. The effect of such a requirement, for example, would be to grant full pension benefits to an employee who worked only in his last year before retirement for a contributing employer and to deny benefits to an employee who may have worked twenty years or more for contributing employers and only his last year for a non-contributing employer. Such a requirement could hardly be said to promote the legitimate policy referred to in note 3, *supra,* and the Court so held in *Roark, supra.*

to demonstrate the present requirement to be arbitrary and invalid. We think that they are entitled to the benefit of that conclusion. 439 F.2d at 509.

In a later case, DePaoli v. Boyle, 144 U.S.App.D.C. 364, 447 F.2d 334 (1971), the Court was again faced with the signatory last employment requirement. Subsequent to the decision in *Roark, supra,* the Trustees adopted Resolution 83 in an attempt to provide a validating context for the requirement of signatory last employment. Resolution 83 retained the requirement of signatory employment in the last year before retirement, but it added a condition of a minimum of five years' signatory employment after May 28, 1946, the five-year period being the minimum period acceptable under the decision in *Roark.*

The applicability of Resolution 83, however, depended on the dates when applications for benefits were received by the Trustees. The Resolution provided that:

1. Applications filed after April 1, 1971 would be governed by Resolution 83;

2. Applications filed between August 14, 1970 [the date of the decision in *Roark*] and March 31, 1971, would be reviewed subject to the terms of Resolution 83;

3. Applications filed before August 14, 1970 would be governed by the resolutions in effect on the date of receipt of the application.

Plaintiff in *DePaoli, supra,* submitted his application for pension benefits before August 14, 1970. The Resolution in effect on the date of receipt of his application was Resolution 63, which had

been invalidated in *Roark, supra,* in its requirement of signatory employment only in the last year preceding retirement. Since DePaoli had also filed his suit in the District Court before August 14, 1970, the date of the decision in *Roark,* the Court found that he was in exactly the same position as the plaintiffs in *Roark* and granted him his full pension benefits.[5]

The position of plaintiffs in the instant case is likewise indistinguishable from that of the retired miners in *Roark, DePaoli* and *Belcher, supra,* note 5. Again, as in those cases, each of the miners herein applied for benefits prior to August 14, 1970; each was denied his pension solely on the basis of the signatory last employment requirement invalidated in *Roark;* and each has been included in this class action, filed in the District Court prior to August 14, 1970.

On March 2, 1972, the Trustees, in an attempt to bring the class of plaintiffs in this action within the terms of Resolution 83, retroactively amended that resolution by adopting Resolution 89, which provides in part:

Now, therefore, be it resolved, that Resolution No. 83 as heretofore adopted by the Trustees, is hereby retroactively amended, effective April 1, 1971 [the effective date of Resolution 83], by inserting the following:

VI. *Effective Date*

\* \* \* \* \* \*

D. Applications received in the office of the Trust Fund prior to August 14, 1970, and denied because the applicant failed to prove that he had ceased work in the bituminous coal industry . . . following regular employment as an employee in a clas-

5. More recently, the Court in Belcher, et al. v. Carey, et al., D.C.Cir. (No. 71-1622, Jan. 28, 1972) (unpublished) affirmed the judgment of the District Court granting relief to the plaintiff miners. In so ruling, the Court stated *per curiam*:

The position of appellees [retired miners] in this case is indistinguishable from that of appellants [retired miners] in Roark v. Boyle . . . and De-

Paoli v. Boyle . . . . As in those cases each of the miners herein had filed his application prior to August 14, 1970, the date of this Court's decision in *Roark*; each was denied his pension solely on the basis of the last employment requirement of Resolution 63; and each filed his suit in the District Court prior to August 14, 1970.

sified job for an employer signatory to the bituminous coal wage agreement then in effect, shall, upon presentation for reconsideration, be reviewed subject to the requirements of paragraphs . . . I.B.2., and I.B. 3. of this Resolution [83], . . .

Be it further resolved that in all other respects Resolution 83 remains unchanged and in full force and effect.

Thus, plaintiffs' applications, heretofore denied, may be presented for reconsideration and review subject to the following provisions of Resolution 83:

## I. ELIGIBILITY

\* \* \* \* \* \*

B. An Applicant who, prior to February 1, 1965, had ceased work in the bituminous coal industry as an employee of an employer signatory to the National Bituminous Coal Wage Agreement of 1950, as amended, shall be eligible for a pension if he has:

\* \* \* \* \* \*

2. Completed twenty (20) years' service in the coal industry in the United States . . . within the thirty (30) years' period immediately preceding the date his application for pension is received at the office of the Trust Fund, provided, however, that as a part of such twenty (20) years' service, an applicant must have worked, after May 28, 1946, a minimum of five (5) years' signatory service. . . .

3. *Ceased work in the bituminous coal industry following regular employment as an employee in a classified job for an employer signatory to the bituminous coal wage agreement then in effect.* [Emphasis supplied].

Resolution 83, therefore, perpetuates the signatory last employment requirement, but in an attempt to comply with the decision in *Roark, supra,* it adds a requirement of a total of five years' sig-

natory service as some part of the minimum of twenty years' work required for the receipt of benefits from the Fund. This Court need not decide, however, whether Resolution 83 provides a validating context for the signatory last employment requirement. Resolution 83 is applicable to the class of plaintiffs herein only by virtue of Resolution 89, adopted on March 2, 1972. Assuming for the moment that Resolution 83 provides a validating context for the signatory last employment requirement, the Trustees were on notice no later than August 14, 1970, the date of the decision in *Roark,* that they might apply revised eligibility requirements to all past as well as future applications for benefits. Trustees chose not to apply the revised requirements of Resolution 83 to applications received prior to August 14, 1970. Thus, plaintiffs' applications remained subject to a requirement of signatory last employment declared invalid in *Roark.* They rightfully continued in this action, begun in July 1969, to challenge Trustees' actions with regard to their applications as arbitrary and capricious.

■ Just as in *Roark,* plaintiffs in this case should not be limited, as defendants contend, to reconsideration of their applications under Resolution 83, lately made applicable to them under Resolution 89. Re-submission of their applications for review under the terms of Resolution 83 would amount to a futile gesture, with the result that plaintiffs will again be categorically denied any benefits from the Fund, and they "will receive no benefit whatever from the fact that they and their counsel have undertaken the substantial burden of the litigation required to demonstrate and present requirement to be arbitrary and invalid. . ." as applied to them *Roark, supra,* 439 F.2d at 509. Plaintiffs herein cannot be denied pension benefits under Resolution 83, as amended at the eleventh hour by the Trustees in Resolution 89, almost two years after the decision in *Roark* and nearly three

years since plaintiffs filed their complaint in this action.

Trustees contend that the doctrine of laches bars any relief, retroactive or prospective, for the class of plaintiffs in this action. Once again, the Trustees have waited until only recently to assert the defense of laches. Their Motion for Leave to Amend their Answer to the Complaint was filed on March 3, 1972. Unabashed by the many stays and extensions of time sought in this case by counsel for Trustees since plaintiffs filed their complaint in July, 1969, the Trustees now assert the defense of laches, and they state that the failure to include that defense earlier was simply the result of an oversight by counsel.

■■ In order to establish the defense of laches, the evidence must show both that the delay was unreasonable and that it prejudiced the defendant. Van Bourg v. Nitze, 128 U.S.App.D.C. 301, 388 F.2d 557 (1967); Kosty v. Lewis, 115 U.S.App.D.C. 343, 319 F.2d 744, cert. den. 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1963). The prejudice normally contemplated in applying laches stems from such factors as loss of evidence and unavailability of witnesses which diminish a defendant's chances of success. Powell v. Zuckert, 125 U.S. App.D.C. 55, 366 F.2d 634, 638 (1966). Defendant Trustees have made no allegations of prejudice to them on that basis.

Of course, as the Court in Powell v. Zuckert, supra, indicated, "laches serve other purposes collaterally, if not directly, including minimization of the disruption and expense caused by affording certain relief." 366 F.2d at 638. Trustees contend that had plaintiffs instituted this action earlier, the Trustees could have planned for the possible serious financial impact upon the Fund, assuming the success of plaintiffs' suit. Thus, for example, "Trustees may have elected not to increase benefits and pensions to those miners presently enrolled, thereby conserving the assets of the Fund so more miners could be paid pensions."

■ Trustees have clearly been on notice that the signatory last employment requirement as applied by them might be arbitrary and capricious since the date of the first *Roark* decision, Roark v. Lewis, *supra,* note 2, August 21, 1968. Plaintiffs in this action filed their suit in District Court July 15, 1969. The Court in Roark v. Boyle, *supra,* invalidated the signatory last employment requirement under resolutions then in effect on August 14, 1970. The Court again, in *DePaoli, supra,* on June 25, 1971, and in *Belcher, supra,* on January 28, 1972, invalidated the signatory last employment requirement as applied to the miners in those cases, whose position, as stated above, is indistinguishable from that of plaintiffs in this class action.

Trustees, nevertheless, waited until March 20, 1972, to assert that they have been prejudiced in not having earlier notice to prepare for the impact upon the Fund of a judgment for plaintiffs in this action and that their failure to assert the defense of laches earlier is owing to a mere oversight of counsel.

The Court finds that the defense of laches cannot now bar plaintiffs' claims for benefits from the Fund.

The Court will enter at this time an order enjoining Trustees from denying pension benefits in the future to the members of the class of plaintiffs herein who have been denied such benefits heretofore solely on the ground that they failed to establish proof of signatory last employment.

With respect to past pension benefits which have been denied plaintiffs, this Court is aware of the concern expressed by the Trustees as to the condition of the financial resources of the Fund and their responsibility to all eligible persons to pensions and other benefits. There has been brought to the attention of this Court the January 2, 1973 Settlement Agreement between the Trustees and counsel for the class plaintiffs in Blankenship, Lamb, et al. v. United Mine Workers of America Welfare and Retire-

ment Fund of 1950, et al., consolidated Civil Actions Nos. 2186–69 and 2350–69, United States District Court for the District of Columbia. That agreement has been preliminarily approved by Judge Gesell and provides for payment of benefits to between 9,000 and 20,000 retired miners and widows. It is estimated that the annual prospective cost of the settlement may equal or exceed $40,000,000 and that the cost of the retroactive benefits might exceed $12,-000,000. The retroactive pension payment to each retired miner eligible under the agreement is limited to one year or $1800.00. The class plaintiffs in this *Pete* case, along with certain others, are excluded from the settlement agreement.

■ While this Court is aware of the defendants' concern for the overall administration of the Fund, it is also mindful that a judgment would have long ago been entered for the class plaintiffs here had it not been for the actions of defendants' counsel. As the record in this case shows, one delay followed another from the time of Roark v. Boyle, *supra*, on the assurance of counsel for defendants that first *DePaoli* and then *Belcher* would control this case and dispose of it. Had it not been for those delays these plaintiffs would long since have been receiving their pension benefits as have Roark, DePaoli and Belcher. To limit these class plaintiffs to future benefits would be unjust in light of the circumstances. Therefore, the order to be entered here will allow the class plaintiffs future pension benefits and past benefits from the date this action was filed on July 15, 1969.

As to pension benefits that would otherwise be payable to the class plaintiffs for the period prior to July 15, 1969, this Court will retain jurisdiction to conduct an evidentiary hearing in order to determine the amount of those pre-July 15, 1969 pension benefits and the effect their payment would have on the Fund and all the beneficiaries thereunder.