Taylor ROARK, Appellant,

v.

John L. LEWIS et al., Appellees.

Maude W. REESE, Executrix of the Last Will and Testament of Joe S. Rees(e), Appellant,

v.

John L. LEWIS et al., Appellees.

Theo R. FULLER, Appellant,

v.

John L. LEWIS et al., Appellees.

Nos. 21208–21210.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 16, 1968.

Decided Aug. 21, 1968.

Petition for Rehearing Denied Oct. 10, 1968.

Mr. Julian H. Singman, Washington, D. C., with whom Mr. Orlin L. Livdahl, Jr., Washington, D. C., was on the brief, for appellants.

Mr. Harold H. Bacon, Washington, D. C., with whom Messrs. Welly K. Hopkins and Joseph T. McFadden, Washington, D. C., were on the brief, for appellees.

Before BAZELON, Chief Judge, and BURGER and TAMM, Circuit Judges.

TAMM, Circuit Judge:

The three appellants are retired coal miners. They applied to the appellees, trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, for pensions. When their applications were denied, they filed suit in the District Court seeking damages, an order compelling their enrollment as beneficiaries of the Fund and injunctive relief. Cross motions for summary judgment were made, appellees' motion was granted and this appeal was taken.

Appellant Roark worked in the coal industry thirty-nine years. He was employed for eleven years by coal operators who were, during those years, contributing to the Fund. After the eleven year period, he was employed by a non-contributing operator for two years. Appellant Rees[1] worked in the coal industry forty-two years. He was employed nine years by operators who were contributing to the Fund during the time they employed him. After the nine year period, he was employed by non-contributing operators for twenty-two months. Appellant Fuller worked in the coal industry twenty-nine years. He was employed fourteen years by coal operators who were contributing to the Fund during the time they employed him. After the fourteen year period, he was employed by non-contributing operators for twenty-three months. Each application was denied because the applicant's *last regular employment* in the industry was not with a contributing operator—a requirement imposed, in the trustees' view, by Resolution 56, as amended by Resolution 57.[2]

## I

The Fund was established by the National Bituminous Coal Wage Agreement of 1950, pursuant to 29 U.S.C. § 186(c) (5) (1964). That statute explicitly casts authority to create such a fund in trust terms, consequently the scope of court review of trustees' action has been defined as one of determining whether their action was arbitrary or capricious. If it was, then potential ben-

1. While this opinion was being printed appellant Joe S. Rees died and upon consideration of the motion of Maude W. Rees, Executrix of the Last Will and Testament of Joe S. Rees, this court ordered that Maude W. Reese be substituted as appellant in this case. This order is without prejudice to the proceedings which have already occurred in this action or which may occur hereafter.

2. The requirement was changed by Resolution 63, adopted January 4, 1965, to require, *inter alia*, that retirement immediately follow a full year of employment with a contributing employer. Although appellant Fuller ceased work shortly after Resolution 63 became effective, the trustees, in an attempt to comply with this court's opinion in Kosty v. Lewis, 115 U.S.App.D.C. 343, 319 F.2d 744 (1963), did not rely on it in denying Fuller a pension bcause he had not had adequate notice of the change. Instead they based denial in his case on substantially the same requirements as are embodied, under their interpretaton, in Resolutions 56 and 57.

eficiaries of the trust may justly complain that they were entitled to have a higher standard of conduct exercised on their behalf. Kosty v. Lewis, 115 U.S. App.D.C. 343, 346, 348, 319 F.2d 744, 747, 749 (1963).

The 1950 agreement provides that the trustees "shall have full authority * * with respect to questions of coverage and eligibility. * * * " Joint Appendix at 33. The specific eligibility requirement, promulgated by the trustees under that authority and relied upon by them in denying each of the applications here is as follows: "An applicant shall be eligible for a pension if he has: * * * Permanently retired from and ceased work in the Bituminous Coal Industry after May 28, 1946, *following regular employment * * * as an employee of an operator signatory to the National Bituminous Coal Wage Agreement of 1950, as amended. * * * "* (Emphasis supplied.) We first address ourselves to the contention that the trustees' interpretation of this eligibility requirement is arbitrary and capricious.

■ The trustees interpret the resolution as requiring an applicant's *last* employment in the industry to have been with a signatory employer; that "following" signatory employment means retirement must come "immediately after" such employment. Appellants contend that that interpretation is an unreasonable one because "following" means "after," but not "immediately after." Webster, New International Dictionary 981 (Unabr. ed. 1950) defines "following" as: "1. Next after; succeeding; ensuing; as, the assembly was held on the *following* day." Despite this clear meaning which supports the trustees, appellants argue that the trustees themselves must not have thought the language meant what they say it means, because in Resolution 63 (adopted later and not applicable here) they changed the language to read "immediately following." We are unable to fault the trustees for attempting to increase the clarity of an eligibility requirement, even though we think the meaning of the present language is plain. Thus, we conclude the trustees' interpretation is a patently reasonable one and that it falls short of arbitrary or capricious conduct.

II

■ We turn now to appellants' argument that if the trustees' interpretation is lawful, the requirement itself is not. While the trustees have broad discretion in setting eligibility requirements, there are obvious limits. Applicants could not, for example, be denied pensions because of their race or religion. *See generally* Steele v. Louisville & N. R. R., 323 U.S. 192, 208, 209, 65 S.Ct. 226, 89 L.Ed. 173 (1944) (Opinion of Mr. Justice Murphy, concurring). Although none of the reported cases we have found which deal with UMW pension applications has directly confronted the question of court review of eligibility requirements,[3] we see no reason why the previously announced standard (to determine whether the trustees' conduct was arbitrary or capricious) should not apply. Trustees' action in prescribing eligibility requirements affects the rights of potential beneficiaries in the same vital way as do other trustees' actions.

Trusts of the kind here involved, established under a specific exception to the Taft-Hartley Act, are hybrids which do not fit the categories of ordinary trusts. *See* Restatement (Second) of Trusts § 375, comment g (1959). While the specific beneficiaries are unnamed, characteristic of a charitable trust, the funds which make up the res were not paid to the trust as acts of beneficence. They were paid to the trust to satisfy a contractual duty owed by signatory operators to the signatory union and the employees it represented. Lewis v. Benedict Coal Corp., 361 U.S. 459, 465–466, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); Lewis v. Owens, 338 F.2d 740, 742 (6th Cir. 1964). When the trust was first established, of necessity, most applicants

---

3. *But see* Moglia v. Geoghegan, 267 F.Supp. 641, 645 (S.D.N.Y.1967).

had worked the bulk of the required time before signatory operators had begun paying into the trust a stipulated price per ton of coal mined. Without intimating that those early applicants were the recipients of charity, it is nevertheless clear that the longer an applicant has worked for contributing employers, the more direct connection there is between his labor and the sums paid to the trustees on his behalf.

Appellants have demonstrated the peculiarities of the attacked requirement—that an employee's last regular employment before retirement be with a signatory operator. Under the requirement, employees could spend, as appellants did, practically their entire adult lives working for mine owners who had contributed to the Fund since its inception; yet if they were to work for a non-signatory operator for any period after leaving a signatory operator, they would forfeit their otherwise valid pension claims. Conversely an applicant could have worked nineteen of the required twenty years in the industry for a non-signatory operator (who had contributed nothing to the Fund) and still be eligible for a pension if only he worked his last regular employment for a contributing operator.

The purposes stated in the 1950 agreement include: "to make payments from principal or income or both, of (1) benefits to *employees of said* [*signatory*] *operators* \* \* \*." (Emphasis supplied.) Further, 29 U.S.C. § 186(c) (5) (1964) provides that authorized trusts must be created "for the sole and exclusive benefit of the employees \* \* \*" of contributing employers. The trustees rely on the statutory language as a basis for the contested requirement. They argue that applicants must be employed by signatories when they cease work or the requirement that benefits be limited to employees of contributing employers will not be met. This seems to us to be rather hollow since, as we noted above, the requirement would give a pension to an applicant long employed by a non-signatory, provided his last regular employment was with a signatory. In addition,

once an employee retires or ceases work (also a requirement for eligibility) he is not an "employee" of anyone when he applies for a pension.

If the Fund's purpose is to pay benefits to contributing employers' employees (whose work generated the contributions), it is difficult to see how such a requirement promotes that purpose. It makes employees like these appellants sacrifice an otherwise valid pension claim because they worked a relatively short time for non-contributing operators. The contributions which signatory operators made on their behalf did not evaporate as a result of their later employment with non-signatories.

On this showing, applicants made out a prima facie case as to the requirement's unreasonableness. Once such a showing is made, we believe the burden must be cast upon the trustees to come forward with evidence establishing the reasonableness of their requirement, based on the purposes of the Fund. There may well be several reasons for the instant requirement which would preclude the court's invalidating it, but the court has been furnished no explanation, either on the record or at argument. Accordingly we remand the case for a hearing at which the trustees may show what, if any, reasonable relationship exists between the purposes of the Fund and the requirement that an employee's last regular employment be with a signatory operator.

The record before us, based as it is upon stipulated facts, is extremely scanty. We are unwilling on the present record to formulate an opinion which may be far-reaching in its ultimate effect. We recognize that by their very nature most eligibility requirements established in this type of trust are colored to greater or lesser degree by an element of arbitrariness. There are often, however, excellent reasons which impel and require the establishment of a positive line of demarcation separating the eligible from the non-eligible. Basically it is the responsibility of the parties and Congress to determine the appropriateness of the

pension plans with the court's participation limited to affirmative action only in those cases where the eligibility requirements are so patently arbitrary and unreasonable as to lack foundation in factual basis and/or authority in governing case or statute law. We suggest therefore that in the remand hearing the record be enlarged with sufficient detail to permit us to measure the trustees' action against existing standards of arbitrary and capricious conduct. Certainly evidence as to the reasons why the appellants left their employment with contributing employers, as well as pertinent evidence as to economic factors such as wage differentials then existing between contributing and non-contributing employers, the availability of employment by contributing employers, and related factual material setting forth the factors confronting both the appellants and the appellees during the crucial period of these cases could be a valuable aid to a proper decision on our part. We recognize too that there may well be actuarial considerations which might become pertinent through competent evidence.

The court is fully cognizant of the internal pressures exerted on the trustees: the size of the pie is fixed and variations can be achieved only by changing the size or the number of the slices. There is no camouflaged design on the part of the court to second-guess the discretionary judgments of the trustees, nor should we be read as attributing a contractual right to a pension to potential beneficiaries who have been employed by signatory operators.[4] We do say that when such employees are *denied* pensions by a requirement which would *give* pensions to employees having worked a substantially lesser period of time for contributing employers, the burden is on the trustees to show some rational nexus between the Fund's purpose and the requirement. If such a nexus is shown, the court's scrutiny is at an end. It is for the trustees, not judges, to choose between various reasonable alternatives.

Miniard v. Lewis, 128 U.S.App.D.C. 299, 387 F.2d 864, 865 (1967).

The judgment of the District Court is remanded for further proceedings not inconsistent with this opinion.

Remanded.

BAZELON, Chief Judge (concurring in the result):

I agree that these cases must be remanded for further findings of fact. We cannot decide on this record whether the eligibility requirements the trustees have set are arbitrary and capricious.

However, I think we are hardly in a better position to decide whether the trustees' interpretation of that requirement is arbitrary and capricious. The reasonableness of their interpretation as applied to appellants would seem to depend at least in part on why they left their jobs with contributing employers after long service and what other jobs were then available to them. If they were discharged for cause, for example, or if they voluntarily left service with a contributing employer to get some superior temporary wage benefit from a non-contributor, I would find no difficulty with the trustees' reading. Similarly, the trustees' interpretation would seem reasonable if appellants could have found other work with contributing employers after they had left their original employ.

But the facts could conceivably be quite different. Appellants may have been forced off contributing payrolls because their employers closed the mines and because no other job with a contributing employer was available. On those facts, we might well find arbitrary and capricious a reading of the eligibility requirements which would deny appellants their pensions.

Since we must remand in any case, and since the majority opinion suggests that the District Court look into the factual issues I have raised, I would defer judgment on the trustees' interpretation until all the facts are in.

---

4. We do not reach the question. *See* Danti v. Lewis, 114 U.S.App.D.C. 105, 108, 312 F.2d 345, 348, n. 3 (1962) and cases cited therein.