**William J. TAYLOR**

v.

**I. T. U. NEGOTIATED PENSION PLAN, a Trust.**

**John C. LANE**

v.

**I. T. U. NEGOTIATED PENSION PLAN, a Trust.**

**Andrew P. ZELLER**

v.

**I. T. U. NEGOTIATED PENSION PLAN, a Trust.**

Civ. Nos. B–77–1902, B–77–1903 and B–77–1904.

United States District Court, D. Maryland.

Jan. 24, 1979.

Thomas J. Aversa, Jr., Towson, Md., for plaintiffs.

Anthony A. Abato, Jr. and Abato & Abato, Towson, Md., for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

Plaintiffs in these three cases are all printers formerly employed by printing companies which contributed to the International Typographical Union Negotiated Pension Plan (the Plan) on their behalf. Plaintiffs are suing the Plan to recover benefits allegedly due them under a certain provision of the Plan in effect at the time they terminated their employment in 1975. Jurisdiction is predicated on 29 U.S.C. § 1132(e). Defendant Plan responds that plaintiffs were not entitled to the requested benefits in 1975 under the provisions then in effect, nor were plaintiffs entitled to the benefits at the time they requested them in 1976 under the Plan as amended. Effective January 1, 1976, relevant provisions of the Plan were amended to conform to standards established by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* Under the new provisions, none of the plaintiffs are presently entitled to the requested benefits.

Both plaintiffs and defendant have moved for summary judgment pursuant to Fed.R.Civ.P. 56. There are no genuine issues of material fact in dispute. The issue of law to be resolved is whether, despite the existence of the new provisions at the time plaintiffs applied for the benefits, plaintiffs may nevertheless collect those benefits pursuant to the prior provisions existing at the time their employment was terminated. This court holds that they may not.

The parties have stipulated to the relevant facts. The Plan originated in 1966 pursuant to an agreement between the International Typographical Union (ITU) and various employers in the printing industry. The purpose of the trust which was then established is to receive contributions from employers and to distribute benefits to eligible beneficiaries under the Plan provisions established by the trustees, one-half of whom are employer trustees and one-half of whom are ITU trustees. Direct contributions to the Plan are made by employers pursuant to individual collective bargaining agreements with local unions.

Plaintiff in Civil No. B–77–1902, William J. Taylor, left covered employment in July 1975, with a total of seven years, three months of service credited towards his pension benefits. Plaintiff in Civil No. B–77–1903, John C. Lane, left covered employment in October 1975, with a total of ten years, eleven months of credited service. Plaintiff in Civil No. B–77–1904, Andrew P. Zeller, had a total of fifteen years, two months of credited service when he left covered employment in October 1975. All three plaintiffs applied for withdrawal benefits after January 1, 1976.

The plaintiffs appear to be relying on the provisions of the Plan in effect when they terminated their employment in 1975, and in particular on section 5.04 which provided in pertinent part as follows:

Section 5.04 Withdrawal Benefit

1. A Participant who has ceased to be an Employee for a period of six months shall be eligible to apply for a Withdrawal Benefit, provided such cessation is permanent. The Trustees shall determine by rules uniformly applicable to all persons similarly situated what constitutes permanent cessation. If such application is approved by the Trustees, the Withdrawal Benefit shall be in lieu of all other Benefits. The amount of Withdrawal Benefit payable under this subsection 1 shall be equal to fifty percent of the total of all Contributions made on behalf of the Participant by all Contributing Employers.

In effect, this section allowed an employee to withdraw one-half of the employer contributions six months after the employee permanently ceased employment. These withdrawal benefits were to be in lieu of all other pension benefits. Under this section, plaintiffs would have been entitled to apply for the withdrawal benefits from the Plan six months after they terminated their employment. However, on January 1, 1976, prior to the expiration of this six-month period, the Plan was amended to conform to the provisions of ERISA, also effective on January 1, 1976. 29 U.S.C. § 1061(b)(2). Under the Plan as amended, the plaintiffs are not entitled to the withdrawal benefits.[1]

One of the purposes of ERISA was to establish certain minimum standards for the vesting of accrued employee pension benefits. 29 U.S.C. § 1001(a), (c). Consistent with this purpose and the specific provisions of ERISA, the Plan was amended to provide that employees with ten years of service attain a vested right to their pension benefits. See § 5.07 of the Plan; 29 U.S.C. § 1053(a)(2)(A). In addition, the Plan was also amended to establish a "break in service" provision. Under § 2.01(20) of the amended Plan, a break in service occurs when a participant, who has not yet achieved a vested right to pension benefits, either is in receipt of social security benefits or has remained out of covered service for a number of years equal to the period of his prior covered service. Under the amended § 5.04, only when such a break in service occurs is an employee eligible to apply for withdrawal benefits in lieu of the other pension benefits. These amendments were made in order to bring the Plan into conformance with 29 U.S.C. § 1053(b)(3)(D), which requires pension plans to include, in calculating the ten years of service necessary to achieve a vesting of the benefits, all years of credited service accumulated prior to an equal number of consecutive years out of covered service. For example, under the Plan and ERISA, an employee with seven years of service credit could not lose the benefit of those seven years towards his vested pension rights until he was away from covered employment for seven years.

These amendments have adversely affected plaintiffs' rights to request withdrawal benefits in lieu of other pension benefits. Plaintiff Taylor had a total of seven years, three months of credited service when he left covered employment in July 1975. Eligibility for the benefits under the amended

1. Copies of the Plan and the 1976 amendments are attached to the original of this Memorandum and Order.

§ 5.04 is no longer established by his ceasing employment for a period of six months. Rather, Taylor will not be able to receive the withdrawal benefits until either he receives social security benefits or remains out of covered service for a period equal to covered employment. Having terminated employment in July 1975, Taylor has not satisfied the required waiting period and so is not eligible for withdrawal benefits under the amended § 5.04.

Plaintiffs Lane and Zeller are not eligible for withdrawal benefits under the amended § 5.04, which allows the disbursement of withdrawal benefits only to employees who have not yet attained a vested right to the pension benefits. Since they both have over ten years of credited service and thus have a nonforfeitable vested right to the benefits under the Plan and ERISA, they are not entitled under the amended § 5.04 to elect to receive withdrawal benefits in lieu of their other pension benefits.

The court concludes that the plaintiffs are not entitled to the withdrawal benefits under the applicable terms of the Plan. None of the plaintiffs were entitled to such benefits under the Plan in effect before January 1, 1976, since under the old § 5.04 they were not eligible to apply for withdrawal benefits until they ceased to be covered employees for a period of six months. None of them were out of covered employment for a period of six months prior to January 1, 1976, and none of them requested withdrawal benefits before the amended plan took effect. In addition, for the reasons discussed above, the plaintiffs are not presently entitled to withdrawal benefits under the amended § 5.04.

The plaintiffs argue, however, that they should be allowed to recover the withdrawal benefits since the trustees were acting unfairly and arbitrarily in amending the plan. They submit that the trustees have breached their fiduciary duties and retroactively divested the plaintiffs of their withdrawal rights.

The plaintiffs' argument is without merit. The plaintiffs were not divested of any rights since, as discussed above, they were not eligible to apply for withdrawal benefits under the old § 5.04 during the period it was effective. Moreover, the amendments will not necessarily work any economic disadvantage upon the plaintiffs; plaintiff Taylor will be eligible to receive with interest the withdrawal benefits when the requisite waiting period expires, and plaintiffs Lane and Zeller have nonforfeitable, vested rights to their normal pension benefits when they reach the age of eligibility. Most importantly, these amendments were not arbitrary; both the mandatory vesting and break in service amendments were enacted to comply with the general purpose and specific requirements of ERISA. For the Plan to disburse the requested withdrawal benefits to the plaintiffs would appear to conflict with the provisions of ERISA. The Plan could not allow Taylor to withdraw one-half of the employer contributions in lieu of other pension benefits since Taylor could later resume employment and seek credit for his years of prior service towards the vesting of his pension benefits under the ERISA break in service provisions of 29 U.S.C. § 1053(b)(3)(D). Since plaintiffs Lane and Zeller have a *nonforfeitable* right to pension benefits under 29 U.S.C. § 1053(a)(2)(A), they cannot withdraw the employer contributions in lieu of their pension benefits; disbursement of the withdrawal benefits would not appear to prevent them from later requesting their nonforfeitable regular retirement benefits. Thus, the payments requested by plaintiffs could potentially result in a windfall to them and an undermining of the fiscal integrity of the Plan. These amendments to the Plan are fair and reasonable, and were enacted in an attempt to comply with the ERISA remedial provisions, effective January 1, 1976.

The plaintiffs cite *Kosty v. Lewis*, 115 U.S.App.D.C. 343, 319 F.2d 744 (1963), *cert. denied*, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964); *Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir. 1972); and *Norton v. I.A.M. National Pension Fund*, 180 U.S.App.D.C. 176, 553 F.2d 1352 (1977), in support of their position that the trustees of the Plan acted

arbitrarily and capriciously in promulgating these amendments. Those cases are inapposite, and the court is not persuaded by plaintiffs' contention. Unlike the amendments in those cases, these amendments do not effectively deprive the plaintiffs of all their pension benefits; indeed, it is not at all apparent that plaintiffs' economic interests have in fact been damaged. Taylor's ability to elect to receive withdrawal benefits is merely deferred with interest, and Lane and Zeller retain a nonforfeitable right to their retirement benefits. In addition, the trustees of the Plan in this case promulgated these amendments in an attempt to remedy the very abuses present in the cases cited by plaintiffs; such remedial action can hardly be considered arbitrary. Finally, the trustees here were not acting solely in their discretion; instead, they were attempting to comply with the mandates of ERISA. In short, the trustees in the instant case have not acted unreasonably. Since the plaintiffs had no rights to receive the withdrawal benefits under the Plan prior to January 1, 1976, or under the amended Plan effective January 1, 1976, and since the amendments were not arbitrary, the defendant Plan's motion for summary judgment will be granted in all three cases.

Accordingly, it is this 24th day of January, 1979, by the United States District Court for the District of Maryland, ORDERED:

1) That plaintiff William J. Taylor's motion for summary judgment in Civil No. B–77–1902 be, and hereby is, DENIED;

2) That plaintiff John C. Lane's motion for summary judgment in Civil No. B–77–1903 be, and hereby is, DENIED;

3) That plaintiff Andrew P. Zeller's motion for summary judgment in Civil No. B–77–1904 be, and hereby is, DENIED;

4) That defendant International Typographical Union Plan's motions for summary judgment in Civil Nos. B–77–1902, B–77–1903, and B–77–1904 be, and hereby are, GRANTED.