**CENTRAL TOOL COMPANY, Plaintiff,**

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS NATIONAL PENSION FUND, BENEFIT PLAN A, et al., Defendants.**

Civ. A. No. 79–2784.

United States District Court, District of Columbia.

Aug. 26, 1981.

Sander M. Bieber, Michael Joseph, Timothy Trushel, Washington, D. C., for plaintiff.

Denis F. Gordon, Washington, D. C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Plaintiff, whose employees are former participants in the defendant pension fund, brought this action to challenge the cancellation of certain benefits of its employees as a result of plaintiff's termination of participation in the pension plan. Under the terms of the pension agreement, the employees of plaintiff at the time it joined the plan were entitled to "past service credit" for their years of service with Central Tool to count toward meeting the plan's vesting and benefit requirements. Another provision of the plan, however, mandated forfeiture of that credit in the event the employ-

er subsequently terminated its participation in the plan.[1] Several exceptions to the forfeiture rule relieve specified categories of employees from the harsh effects of the forfeiture provision.[2]

Plaintiff challenges the forfeiture provision of the plan agreement under section 302(c)(5) of the Labor-Management Relations Act, 29 U.S.C. § 186(c)(5), which allows payments to pension and similar trust funds only if they are "for the sole and exclusive benefit of the employees." This Court has jurisdiction under section 302(e), 29 U.S.C. § 186(e), to restrain violations of subsection (c)(5), including alleged structural violations, such as the forfeiture provision to which plaintiff objects here. The legal standard for judicial review in this Circuit is whether the provision is "arbitrary or capricious in light of all of the circumstances involved." *Norton v. I. A. M. National Pension Fund*, 553 F.2d 1352, 1356 (D.C.Cir.1977). Currently before the Court are cross-motions for summary judgment.

### I

Plaintiff became a contributing employer in defendants' pension plan on July 1, 1970. The plan agreement provided that Central Tool's employees would be granted "past service credits" for all years of their prior employment with plaintiff and that added to these past credits would be "future service credits" for each employee for continued employment with plaintiff after July 1, 1970. Past service credits and future service credits were added together in determining satisfaction of vesting requirements and setting amounts of benefits, an employee's benefits becoming vested when he accrued ten years of combined service credits, including at least five years of future service credit, and when he reached fifty years of age. Significantly for purposes of this litigation, the agreement further provided, however, that employees of an employer

---

1. At various times over the period of plaintiff's participation in the plan, the forfeiture provision was amended (see p. 814 *infra*). Although the details of the provision varied, this basic feature remained constant and is the subject of plaintiff's principal challenge.

2. Some of these exceptions were in effect over the entire period of plaintiff's participation in the plan, and others were added in the course of plaintiff's membership.

which terminated participation in the plan would lose their past service credits, the only exceptions being employees of an employer which went out of business and those who ceased working for an employer more than two years before it terminated its participation in the plan.

The purpose of the forfeiture provision was to provide an incentive for contributing employers to remain with defendants' plan and to protect the plan from paying potentially large benefits to employees whose employer had made comparatively few contributions to the pension fund. The exceptions were intended to exempt employees who could not be held responsible for their employer's termination of participation.

Three years after plaintiff joined the plan, several changes in the plan's forfeiture terms were adopted. Additional exceptions from the forfeiture provision were added for the benefit of employees who terminated their employment within thirty days after their employer terminated plan participation; for employees whose bargaining unit transferred to another union lodge belonging to defendants' fund; and for employees who managed, within eight years of their employer's termination, to earn five years of future service credit in defendants' fund through employment elsewhere.[3] A final relevant exception to the forfeiture provisions was apparently adopted in 1978, when employees who were already receiving pensions before their employer's termination or who had already applied for pensions and had begun receiving benefits within two months after their employer had terminated were exempted from these provisions.

Central Tool terminated its participation in defendants' plan on June 30, 1978, and, in accordance with the provisions of the plan agreement, defendants cancelled the past service credits for all of Central Tool's employees who did not fit into any of the excepted categories. Inasmuch as Central Tool agreed at the time of its termination of participation in defendant's plan to establish its own pension fund for the benefit of its employees and to pay the benefits that would have been paid under defendants' plan, the cancellation by defendants of the past service credits increased the company's liability to its employees. On this basis, it brought this action to challenge the forfeiture provisions of defendants' plan under ERISA[4] and the Labor-Management Relations Act.

## II

Plaintiff's claims that the forfeiture provisions are arbitrary and capricious and, hence, that they constitute a structural violation of section 302(c)(5) may conveniently be discussed under three headings: the provisions on their face; their operation with respect to different groups of employees; and their application to any of plaintiff's employees in this instance.

With regard to the facial validity of the provision, plaintiff contends that they were not actuarially based, cannot be actuarially justified, and, hence, constitute an impermissible penalty; that they leave employees with the inherently impermissibly hard choice of quitting or losing benefits; and that they arbitrarily impose a technical bar to benefits for employees who were powerless to affect the employer's termination from defendants' plan. There exist, plaintiff suggests, more reasonable methods to protect defendants from assuming substantial unfunded liability which would not cause the drastic consequences of the forfeiture provisions imposed here. These arguments can fairly be summarized as a contention that the forfeiture provisions do not bear a close enough relationship to the purposes for which they were designed and that since less onerous means for accomplishing those legitimate purposes can be

---

3. The 1973 amendments also changed the scope of the forfeiture sanction from past service credit only to all credited service, past and future. However, this change was repealed in 1974.

4. The Employee Retirement Income Security Act of 1974. On January 25, 1980, the Court dismissed plaintiff's claims under ERISA for lack of standing.

used, these terms should be invalidated as arbitrary and capricious on their face.

Second, plaintiff argues that the forfeiture clause is arbitrary and capricious in the way in which it differentiates among participants, by, for example, excepting employees who terminated employment three years before plaintiff dropped out of the plan, but including employees who quit one year before plaintiff terminated its participation, even though more contributions were paid on behalf of the latter than for the former. Irrespective of the reasonableness of the overall specification of forfeiture of credited service, once the decision is made to except some categories of employees from those provisions, plaintiff suggests, the excepted categories must be designated rationally, so as to avoid discriminating among employees arbitrarily.

Third, plaintiff argues that the forfeiture provisions cannot be applied to its employees because of lack of adequate notice. Thus, it is said, the plan summary in the pension plan booklet distributed to employees states that those who have satisfied the vesting requirements of the plan are entitled to "freeze" their accumulated pension credits, and there is no reference to the possibility that the forfeiture provisions may override pension rights that have vested; and, more directly, that defendants failed to notify plaintiff's employees at the time of plaintiff's termination that they had the option to preserve their credited service by terminating their employment with Central Tool within thirty days.

Defendants argue in response that the forfeiture provisions constitute a rational approach to the problem of unfunded liability resulting from an employer's withdrawal from the pension fund, especially since the plan could have denied all credit for past service. In this view, cancellation of past service credits for employees of terminating employers bears a rational nexus to the goal of controlling the pension fund's exposure to unfunded liability and, hence, is not arbitrary. The exceptions from the forfeiture provision represent, in defendants' view, attempts to exempt those categories of employees for whom cancellation of credited service would provide no meaningful incentive for continued plan participation (such as employees of employers who terminated participation because they went out of business, an event obviously beyond the control of the employees). The fact that the exceptions do not allow for a perfect differentiation between those employees who are partially responsible for an employer's termination and those who are not does not demonstrate, defendants suggest, that they are irrational. Finally, defendants contend that plaintiff's complaints are unrelated to the allowance of exceptions in the plan, inasmuch as the repeal of the exceptions would improve the position of none of Central Tool's employees.

### III

The central issue presented by these conflicting arguments is whether implementation of the forfeiture provisions to cancel past service credits in calculating vesting status and benefit entitlement for previously vested employees is arbitrary or capricious.[5]

5. Plaintiff claims that *Norton v. I.A.M. National Pension Fund, supra,* clearly supports its position in this regard. But the Court of Appeals in that case specifically reserved the issue of whether the forfeiture provisions were unreasonable *per se* and the question whether an employee in the position of the plaintiff in that case could lawfully have been divested of credited service if he had rejected an opportunity to receive his pension by retiring upon his employer's withdrawal from the plan. See 553 F.2d at 1358, 1359 n. 10. Indeed, the court decided only that without the pension fund's having provided the plaintiff with such an op-

portunity, its cancellation of service credits was unreasonable. And it went on to state, albeit in dictum, that provision of an opportunity to retire with a pension based on all credited service was a prerequisite to cancellation of any credits, past or future, retroactively or prospectively. 553 F.2d at 1358–59. The court identified two criteria whose presence in concert it deemed sufficient to render unreasonable provisions discounting credited service: the previous vesting of the employee's rights to a pension or the previous payment of substantial pension contributions on his behalf; and the occurrence of the divesting condition

Any analysis must begin with the presumption that "vesting" means "vesting." Cf. *Nachman v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 376–81, 100 S.Ct. 1723, 1733–1736, 64 L.Ed.2d 354 (1980). The presumption that vested benefits are not generally understood as remaining subject to conditional divestment is buttressed by an examination of the plan booklets distributed to plaintiff's employees. These booklets described vesting as a provision which would enable employees to "freeze" their entitlements to a pension, and they indicated only age and years of credited service as determinants of vesting, without ever suggesting the possibility of divestment by virtue of the forfeiture provisions. It is not necessary to reach the question whether the presumption that vesting indicates a "frozen" status retains its force if the plan participants are clearly informed that divestment provisions remain operable; the presumption is certainly warranted when, as here, the pension fund reinforces that impression.[6] See *Winpisinger v. Aurora Corp.*, 456 F.Supp. 559, 569 n. 9 (N.D.Ohio 1978).

Once it has been determined that both the ordinary understanding of the terminology involved and examination of the plan summary suggest that vesting is unconditional, the question remains whether some compelling reason running counter to this ordinary presumption mandates the conclusion that the vesting provisions are appropriately overridden by the forfeiture provisions. Unless such an overriding purpose can be identified, the forfeiture of all past service credit without regard to vesting status must, of necessity, be regarded as arbitrary and capricious. Moreover, in light of the notice deficiency, the burden is on the defendants to demonstrate that such a purpose renders the forfeiture of past credits of vested employees necessary to the overall operation of the plan. Cf. *Roark v. Lewis*, 401 F.2d 425, 428 (D.C.Cir.1968).

It is the purpose of the forfeiture provisions to protect the fund from the dumping of unfunded liability as a result of an employer's termination of participation after past service credits have been granted to its employees. Although the goal itself is unexceptionable (see *Baltimore Rebuilders, Inc. v. National Labor Relations Board*, 611 F.2d 1372, 1379 (4th Cir. 1979)), it is not so clear that the provisions here at issue are reasonably necessary to effectuate that goal. Defendants rely primarily upon the language of *Baltimore Rebuilders, supra*, 611 F.2d at 1380, to the effect that forfeiture "is a reasonable pension plan provision which operates fairly to induce the voluntary continuation of pension coverage," and upon other language in ERISA[7] indicating that Congress contemplated the inclusion of forfeiture clauses in pension plan agreements. But these references do not support defendants' contention that the forfeiture provisions constitute a reasonable means to protect the pension fund. A forfeiture provision may be reasonable if it is actuarially necessary; yet, defendants have not offered any actuarial evidence to support their claim that the provision is tailored to the need to protect the fund. ERISA merely tolerates the use of forfeiture provisions[8] and as the court stated in *Winpisinger*, 456 F.Supp. at 571, when

---

through events over which the employee had no substantial control.

**6.** The second notice issue raised by plaintiff—that there was inadequate information at the time of the decertification vote—need not be resolved as, given the potential for misleading employees initially, no amount of subsequent disclosure would have clearly restored the employees' freedom of decision. The notice question appears difficult to resolve as a factual matter as well. Although the posture of this action—brought by the employer after it guaranteed its employees any credit forfeited as a result of the plan termination—might seem to belie plaintiff's allegation that participants did not have actual notice of the forfeiture provisions at the time of termination, it is not readily determinable how that guarantee of lost rights may have come about or what else employees might have been willing to sacrifice to secure that guarantee.

**7.** See 29 U.S.C. §§ 1002(37)(A)(iv), 1053(b)(1)(c).

**8.** Accord *Elser v. I.A.M. Nat'l Pension Fund*, No. CV–78–2538–DWW (SX), Memorandum at 9 (C.D.Cal. Sept. 5, 1980).

neither the Fund, nor its actuaries and consultants, have studied the incidence of [the asserted justification], ... the distinction from which the Trustees derive the 'rational basis' for their action ... is based at best on assumptions and surmises by the Trustees.

The court in *Baltimore Rebuilders* was ruling solely upon the allegedly coercive effect of forfeiture of past credit. This does not mandate the actuarial conclusion that in the context of the instant plan termination the forfeiture provisions were necessary to preserve the integrity of the fund. Indeed, defendants have suggested no basis, actuarial or otherwise, for having adopted this provision instead of any of a panoply of other possible protective measures. See, e. g., pp. 817–818 *infra*.

To be sure, the pension plan is not a defined contribution plan (in which each participant's entitlement is a function of his contributions) but a defined benefit plan for which "there is no precise 'fit' between any individual employee's contribution history and that employee's entitlement to benefits." [9] For that reason, the Court cannot sustain plaintiff's claim that the provisions operate arbitrarily or capriciously with regard to different classes of employees and that they are unduly discriminatory on that basis. As the Court of Appeals for this Circuit has stated (*Roark, supra*, 401 F.2d at 428):

We recognize that by their very nature most eligibility requirements established in this type of trust are colored to greater or lesser degree by an element of arbitrariness. There are often, however, excellent reasons which impel and require the establishment of a positive line of demarcation separating the eligible from the noneligible.[10]

So here, it cannot be said that the exceptions from the forfeiture provisions—for example, for employees of employers who go out of business, employees already receiving pensions, or employees who ceased working for the participating employer more than two years before the date of plan termination—"are so patently arbitrary or unreasonable as to lack foundation in factual basis" or prior case law.[11]

But defendants' argument is far less compelling with regard to the imposition of the forfeiture provisions overall. Although the provisions need not further their intended goal in each instance in which they operate—disaggregated to the level of the individual employee [12]—they must be reasonably tailored overall to meet their objective, that is, there must be a rational relationship between the means and the objective, at least to the extent of some rough approximation, on the level of the class as a whole. See *Roark, supra*, 439 F.2d at 507. On that basis, the forfeiture provisions may not impose a penalty of greater scale than would be necessary to protect the fund from the dumping of unfunded liability (see *Norton, supra*, 553 F.2d at 1358), and the weaker the support for the provision overall, the more suspect the harsh individual effects of the clause. *Roark, supra*, 439 F.2d at 504.

In the instant case, the effects of the forfeiture provisions are unduly drastic given the poor fit between the provisions and the goal they are designed to achieve, for

---

**9.** Defendants' Reply to Plaintiff's Motion for Summary Judgment at 7.

**10.** See *Roark v. Boyle*, 439 F.2d 497, 504 (D.C. Cir.1970).

**11.** *Roark, supra*, 401 F.2d at 429. The differentiations effected among employees by the exceptions do not amount to the sort of irrational distinctions that have been struck down for ignoring altogether the period of contribution. See *Roark, supra*, 439 F.2d at 507–08. Although the employee who quit working for the participating employer twenty-three months prior to the employer's termination from the plan may have had, in reality, no more opportunity to dissuade his employer from subsequent termination from the plan than the employee who resigned twenty-five months before termination, his experience is not qualitatively different from that of an employee lacking one day of service to qualify under the vesting requirement are compared to an employee who satisfies the requirement with one day to spare. The use of fixed cut-off points in the plan agreement is inherently arbitrary, but it is not impermissibly so.

**12.** See *Roark, supra*, 439 F.2d at 503–04.

far less punitive means than forfeiture of all past service credits are available to satisfy the legitimate objectives of fund preservation. For example, the plan agreement itself contains a separate provision, not challenged here, to remedy the problem of employers terminating from the plan within the first four years of plan participation.[13] The agreement provides that, in the event of such a termination, pension benefits shall only be reduced to the extent necessary to prevent the dumping of unfunded liability (calculated on the basis of a comparison of contributions and actuarially anticipated benefit payments). Defendant has proffered no explanation for the failure of the plan agreement to apply such an actuarially-based mechanism to protect the fund from unfunded liability with regard to the employee groups here involved. In light of the availability of such less drastic means to accomplish the objectives upon which defendants predicate their defense of the reasonableness of the forfeiture provisions, the Court concludes that the challenged provisions are arbitrary and capricious on their face and, hence, constitute a structural violation of section 302 of the Labor-Management Relations Act.[14]

## IV

It remains for the Court to attempt to harmonize the vested status of plaintiff's employees with achievement of defendants' legitimate objective of preserving the fund from unfunded liability.[15] The controlling guideline for effecting this reconciliation is to validate the provision to the maximum extent possible consistently with the constraint that the provisions not cause a divestment of any vested employee. This objective is best achieved by allowing the forfeiture of past service credit, pursuant to the provisions, for benefit accrual purposes, but not for the purpose of determining vested status.[16] Although such an accommodation represents only one of a number of possible solutions, it is the one most apposite here because it necessitates the least intrusion into, and the least alteration of, the negotiated provisions of the plan agreement, consistently with the constraint that vested employees not be divested by operation of the forfeiture provisions.[17] Accordingly, it is the one that will be required.

Both parties have moved for summary judgment. No disputed facts material to the Court's conclusion that the forfeiture provisions constitute a structural violation of section 302 of the Labor-Management Relations Act have been identified. Therefore, the Court concludes that there are no genuine issues of material fact, and that plaintiff is entitled to judgment as a matter of law to the extent that it claims that the forfeiture of past service credits in the determination of vested status of plaintiff's employees is unlawful.

---

13. The forfeiture provision challenged by plaintiff in this action is applicable only to employers who terminate their participation in the plan after more than four years of contribution to the plan.

14. It is worth emphasizing that the Court is not holding that the forfeiture provisions are intrinsically arbitrary and capricious, but only that the "conditional vesting" to which defendants allude may not be maintained in the absence of an adequate actuarial predicate and clear notice to all plan participants of the conditions under which vested status remains subject to divestment.

15. This exercise is, of course, arbitrary to some extent, as it is whenever a court strikes down as unlawful one clause of a contract and is

forced to give meaning to the balance of the contract in a context which the parties may not have precisely foreseen. The task, nevertheless, appears unavoidable.

16. This rule, of course, does not apply to employees who were receiving pensions at the date of termination or to other employees whose benefits were not at issue in the instant dispute.

17. Moreover, it is one of plaintiff's two alternative claims, the other being restoration of all past service credits for both vesting and benefit accrual purposes.