Amos TOMLIN, Appellant,

v.

BOARD OF TRUSTEES OF the CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA and the Construction Laborers Pension Trust for Southern California, Appellees.

Frank STREETER, Appellant,

v.

BOARD OF TRUSTEES OF the CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA and the Construction Laborers Pension Trust for Southern California, Appellees.

Nos. 77–2673, 77–3940.

United States Court of Appeals, Ninth Circuit.

Nov. 13, 1978.

Gill Deford (argued), Julius C. Wesson, Los Angeles, Cal., for appellant.

Kenneth J. Sackman (argued), Beverly Hills, Cal., James Wolf, Los Angeles, Cal., for appellees.

Before CARTER and KENNEDY, Circuit Judges, and KRAFT, District Judge.*

KRAFT, District Judge:

In each of these cases, consolidated upon appeal, no genuine issue of material fact existed and appellants and appellees filed cross-motions for summary judgment. The single issue presented, therefore, is whether the court below incorrectly applied the substantive law in granting judgment for the defendant-appellees. *Inland Cities Express, Inc. v. Diamond National Corp.,* 524 F.2d 753, 754 (9th Cir. 1975).

The Board of Trustees of the Construction Laborers Pension Trust for Southern California (Trustees) is comprised of an equal number of trustees representing, respectively, the employers and the employees. The Trustees administer an irrevocable trust fund, Construction Laborers Pension

sion Trust for Southern California (Southern California Trust), which is derived from contributions by employers. The Southern California Trust was created pursuant to a collective bargaining agreement between employee unions and employers in the Southern California area.

A similar agreement in the Northern California area established a like pension trust fund for Northern California. The two pension trusts are entirely separate. They have different trustees, are funded in different amounts by different employers, cover different employees, and extend different benefits, each trust having its own actuarial problems and solutions.

■ Though § 302(c)(5) of the Taft-Hartley Act [1] requires the fund to be used for the "sole and exclusive benefit" of employees of contributing employers, the Trustees are given substantial latitude in determining what benefits to provide. The sole limitation imposed is that the Trustees' actions shall not be arbitrary and capricious. *Toensing et al. v. Brown et al.,* 528 F.2d 69, 72 (9th Cir. 1975).

In 1963, the Trustees adopted a plan providing for retirement benefits at designated ages after fifteen years of service. Employees with less service were ineligible for retirement benefits, even though they may have had fifteen or more years of combined service under the Southern California and Northern California Trusts. In 1966, the Southern California Trust extended retirement benefits to employees with fifteen or more years of "combined service." Under this modification, an eligible pensioner received a partial or pro rata pension based on the percentage of credits earned under the Southern California Trust.

The Trustees, after some consideration, first established a disability pension in February, 1970. Eligibility was limited to those with fifteen or more years of service under the Southern California Trust. No provision was made for partial or pro rata dis-

---

* Honorable C. William Kraft, Jr., Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. 29 U.S.C. § 186(c)(5).

ability pensions for fifteen or more years of "combined service" under the Southern California and Northern California Trusts.

On February 28, 1972, appellant, Tomlin, a disabled construction worker, applied to the Southern California Trust for a disability pension. He had accumulated only 11⁹/12 years of service thereunder, but also had 3½ years of credited service under the Northern California Trust, a "combined service" in excess of fifteen years. His application was denied as lacking the requisite fifteen years' service.

On August 2, 1976, appellant, Streeter, another disabled construction worker, applied to the Southern California Trust for a disability pension. Since he had accumulated only 9¹¹/12 years of credited service thereunder, his application was likewise rejected. Streeter also had 7⁹/12 years of credited service under the Northern California Trust and, so, a "combined service" in excess of fifteen years.

Tomlin and Streeter filed separate actions against the Trustees and the Southern California Trust in the court below, challenging appellees' failure to provide a pro rata or "combined service" disability pension and seeking declaratory and injunctive relief.

Appellant, Tomlin, contends that the Trustees' failure to determine the actual financial effect upon the plan of providing pro rata disability pensions, while simultaneously increasing existing retirement benefits, together demonstrate a proscribed "arbitrary and capricious" action.

The reason for the Trustees' hesitant approach to the problem of disability pensions was their view that ". . . the prudent course of action that a fund with limited resources should take, was to slowly expand benefits and thereby gauge the effect of the expansion before plunging head-first into possible financial problems." This approach was supported by their actuary, who advised that ". . . there was a concern as to the degree of costs to be effected upon the plan by the new disability benefits

. . ." The Trustees decided that the disability pension program would be reviewed after one year to determine its effect on the actuarial soundness of the Trust, when it would be determined whether benefits should be improved.

In June, 1972, the Trustees received an actuarial review and evaluation of the disability plan in effect during the prior calendar year. They found that the 1971 disability costs comprised about 24% of the annual cost of the entire plan, a rate seven times higher than they initially projected. Consequently, the Trustees' actuary revised the allowance for disability costs sharply upward and urged the Trustees not to expand disability benefits in any way, particularly in consideration of the contribution rate by employers then prevailing. The actuary also advised that there was little or no leeway in the calculated costs and that sufficient time had not yet elapsed to assess accurately the real costs.

Reviewing the information and advice before them, the Trustees decided that any increase in disability benefits would be imprudent. Moreover, they decided to refrain from costs studies at that time, since the Trust could not then afford even a small increase. From that time until 1976, instead of expanding disability benefits, the Trustees reduced them to an actuarial equivalent basis for those applying for benefits after June 1, 1973. In the actuary's view and, as the court below found in its adjudication: [2] "A recession in the Building Trades industry, resulting in lower contributions to the Fund, and amendments necessary to comply with the Employee Retirement Income Security Act have maintained the unsatisfactory position of the Fund so that the Trustees necessarily decided not to expand the benefits in any manner."

■ Both appellants and appellees agree that judgments of the Trustees may be overturned only when made in bad faith, or upon lack of a factual foundation, or when unsupported by substantial evidence. The court below correctly found the Trustees'

2. 435 F.Supp. 1168 at 1171.

decision to have been made in food faith. It had a sufficient factual foundation of actual experience with rising cost and declining income.

The term "substantial evidence" appears as a reviewing standard in a variety of settings. It has been held that the opinions of competent persons may constitute "substantial evidence" to sustain the findings of an administrative determination. *Turnbull, Inc. v. United States,* 389 F.2d 1007, 1014, 180 Ct.Cl. 1010 (1967). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Allen v. Weinberger,* 552 F.2d 781, 784 (7th Cir. 1977). It consists of more than a scintilla but somewhat less than a preponderance of evidence. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966); *Ferrell v. Gardner,* 406 F.2d 1084, 1085 (4th Cir. 1969). It is such evidence as would be sufficient to justify submission of the issue to a jury. *R–C Motor Lines, Inc. v. United States,* 350 F.Supp. 1169, 1171 (M.D.Fla.1972). Our review of their actions demonstrates that the Trustees acted upon substantial evidence and that their decisions were not arbitrary and capricious.

■ We must be ever mindful that it is for the Trustees, not the courts, to choose between two reasonable alternatives. As the court said in *Roark v. Lewis,* 130 U.S. App.D.C. 360, 364, 401 F.2d 425, 429 (1968):

> "The court is fully cognizant of the internal pressures asserted on the trustees: the size of the pie is fixed and variations can be achieved only by changing the size of the number of the slices. There is no camouflaged design on the part of the Court to second-guess the discretionary judgments of the trustees. . . . It is for the trustees, not judges, to choose between various reasonable alternatives."

Increasingly, legislation of every kind appears inevitably to provide expressly for judicial review. There is no special magic in the term "judicial review", by which the courts are now so often beset by problems, the solutions to which might better be in others' hands. Litigants too frequently resort to judicial review in the hope that an unfavorable administrative decision will be negated by substitution of a court's judgment for that of qualified administrators.

Both appellants assert that the Trustees' failure to provide for pro rata disability pensions based upon fifteen or more years of "combined service", while providing for pro rata retirement pensions, was impermissibly discriminatory and, hence, arbitrary and capricious.

■ The gist of appellants' argument on this score is that once the Trustees established a rule for retirement pensions they were obliged to adopt an identical rule for disability pensions. In short, it is contended that the eligibility rule which here failed to provide for "pro rata" disability pensions is unreasonable per se. We disagree.

If the analysis to be made in Section 302 cases is the same or similar to that used in the evaluation of classifications under the Equal Protection Clause, the Trustees did have discretion to consider and to attempt to solve one problem at a time. *See: Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Jefferson et al. v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974).

In the exercise of their discretion the Trustees were, among other things, entitled to consider and to act upon the knowledge or the reasonable belief that applicants for pro rata disability pensions were unlikely to be in the identical position of other individuals entitled to pro rata retirement benefits. Both appellants are younger than 55, the earlier retirement age under the Trust. Granting pro rata disability benefits to them, and to others similarly situated, would constitute a longer, and so, a larger drain on the Trust than pro rata early retirement pensions.

One question remains. Appellant, Tomlin, claims that the court below had jurisdiction under both the Taft-Hartley Act and

certain sections of ERISA.[3] The district court determined that Tomlin had properly invoked jurisdiction under the Taft-Hartley Act, but that ERISA jurisdiction over the claim was lacking, since Tomlin's claim for benefits had matured well before the date on which ERISA became effective. On this appeal, conceding that the substantive provisions of ERISA were not effective retroactively, Tomlin now argues that the procedural provisions were. This contention is made for the sole purpose of attempting to recover attorneys' fees, since ERISA provides a statutory warrant for attorney fee awards,[4] while Taft-Hartley does not.[5]

This unique position was not taken in Tomlin's motion for summary judgment nor otherwise suitably raised in the court below. We have said many times that an issue not raised in the lower court cannot be raised on appeal. *Michael-Regan Co. v. Lindell,* 527 F.2d 653, 659 (9th Cir. 1975). Particularly appropriate to Tomlin's contention are the remarks of the court in *Blondo v. Bailar,* 548 F.2d 301, 305 (10th Cir. 1977):

> "We have not considered the demand of appellant for the award of attorney's fees since it does not appear that this was ever raised in the trial court, and accordingly, it is not appropriate for this court to consider the problem."

Accordingly, the summary judgment entered in each case by the court below is affirmed.

---

3. Sections 502(a)(1)(B), (e) and (f); 29 U.S.C. §§ 1132(a)(1)(B), (e) and (f).

