856 F.2d 187
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Chris J. ORPHAN, Plaintiff-Appellee,
v.
FLORENCE PAPER COMPANY, INC., PROFIT SHARING PLAN; Florence
Paper Company, Inc., Defendants-Appellants.
 No. 87-1754.
 United States Court of Appeals, Fourth Circuit.
 ARGUED: May 4, 1988.
DECIDED: Aug. 26, 1988.
 
 B. Craig Killough (Robert M. Kunes, Evans, Carter & Kunes, P.A., on brief), for appellants.
 Kevin M. Barth, for appellee.
 Before WIDENER and CHAPMAN, Circuit Judges, and EUGENE A. GORDON, Senior District Judge, from the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 The district court found that Chris Orphan was entitled to immediate payment of benefits under the noncontributory profit-sharing plan ("Plan") of his employer, Florence Paper Company, Inc., at the time he terminated his employment. The court found for the appellee Orphan on what the district judge designated as a "breach of contract" action and not on the claim for violation of Sec. 203 of Employee Retirement Income Security Act (the ERISA), 29 U.S.C. Sec. 1053 (1982). The employer appealed claiming that the common law action of breach of contract is preempted by 29 U.S.C. Sec. 1144 (1982).[1]
 
 
 2
 The problem arises from the district court's finding that the complaint stated two causes of action. We conclude that the district court correctly decided the real issue, Orphan's claim to immediate payment of benefits under the plan, and we affirm.
 
 
 3
 * From 1973 to February 1984 Chris J. Orphan was employed by Florence Paper Company ("Company") and was serving as a vice-president and a member of the Board of Directors when he gave notice of his resignation on February 1, 1984. The Company had adopted a noncontributory profit-sharing plan ("Plan") in January 1981. This plan was qualified under ERISA and Orphan was a participant.
 
 
 4
 In his letter of resignation, Orphan stated that such resignation would be effective March 1, 1984, and he requested that the amounts owed by the Company, including any amounts under the Plan be settled as of March 1, 1984. Although the resignation was to be effective on March 1, Orphan ceased working for the Company on February 1, 1984. As of the date Orphan ceased his employment with the Company, the Plan provided that when a participant terminated service with the Company, such participant could elect immediate distribution of his vested account balance.
 
 
 5
 The Plan was amended on March 8, 1984 and the amendment was to be retroactive to January 1, 1983. The amended plan provides that when a participant's employment terminates, the Plan Administrator, in its discretion, may immediately distribute the vested portion of the participant's account, or may defer such distribution until the participant reaches normal retirement. Following the amendment, the Plan Administrator informed Orphan that he would not receive his accrued benefits until he reached normal retirement age.
 
 
 6
 Orphan brought an action in the district court claiming jurisdiction under 26 U.S.C. Secs. 401 and 411 (1982), and also under 29 U.S.C. Sec. 1132(e)(1) (1982). He alleged jurisdiction under 26 U.S.C. Sec. 401 et seq., claiming the Plan had been qualified under the provisions of the Internal Revenue Code, but ERISA provides jurisdiction and not the Internal Revenue Code.
 
 
 7
 In the complaint Orphan alleged his employment, his resignation, the retroactive amendment of the Plan, and the refusal of the Plan Administrator to pay him his vested benefits. He asked the court to declare that the amendment dated March 8, 1984 did not apply retroactively to the vested benefits due and owing him upon his termination of employment on February 1, 1984 and that the defendant be ordered to immediately pay to him his benefits under the Plan.
 
 
 8
 The Company contended that the plaintiff did not incur a "break in service" until January 1, 1985, and that he was still a participating employee under the Plan when the amendment of March 8, 1984 was made. The Company did not assert that the plaintiff was proceeding under a "breach of contract" cause of action. The Company simply stated that under the March 8, 1984 amendment the plaintiff was not entitled to his benefits until he reached normal retirement age.
 
 
 9
 The district court found that plaintiff was proceeding on two theories of recovery: one for violation of Sec. 203 of ERISA (29 U.S.C. Sec. 1053) and another for breach of contract. The court concluded that Orphan did not have a claim under 29 U.S.C. Sec. 1053, because what he was seeking was an "accrued benefit" and that an "accrued benefit" as defined at 29 U.S.C. Sec. 1002(23) is an "annual benefit commencing at normal retirement age."
 
 
 10
 The court then found that plaintiff had proved his breach of contract claim and ordered defendants to pay immediately his vested account balance in the Plan. Appellants claim that Orphan's common-law contract claim is preempted by ERISA, particularly 29 U.S.C. Sec. 1144(a).
 
 
 11
 This case is an example of what confusion can result when labels are indiscriminately assigned. Orphan did not allege two causes of action. He simply stated his view of the facts and asked for relief under ERISA, but he added to the confusion by bringing the Internal Revenue Code into the picture. He did not allege a violation under 29 U.S.C. Sec. 1053, which establishes minimum vesting standards and nonforfeitability requirements. This section is not involved, because Orphan is not claiming that the Plan violated any minimum standard. He is claiming under the clear language of the unamended 1981 Plan which provides:
 
 
 12
 4. When a Participant Terminates Service with Employer. The Participant may elect an immediate distribution of his vested account balance.
 
 II
 
 13
 A suit by a beneficiary to recover benefits under a covered plan, falls directly under 29 U.S.C. Sec. 1132. Metropolitan Life Ins. Co. v. Taylor, 55 U.S.L.W. 4468, 4469 (U.S. Apr. 6, 1987). 29 U.S.C. Sec. 1132(a) provides in part:
 
 
 14
 (a) Persons empowered to bring a civil action
 
 
 15
 A civil action may be brought--
 
 
 16
 (1) by a participant or beneficiary-- ...
 
 
 17
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;....
 
 
 18
 The defendants argue that the amended plan controls because under ERISA's "break in service" rule the administrator is required to defer making any decision regarding the plaintiff's participation in the Plan until the end of the plan year, December 31, 1984. "Break in service" is defined in 29 U.S.C. Sec. 1053(b)(3)(A), (B). This provision is in the Act to protect nonvested employees who may terminate employment and later return to such employment within the same year. This rule is not applicable in the present case.
 
 
 19
 The parties stipulated that Orphan submitted his resignation on February 2, 1984 and that it was effective immediately. The defendants deny that there was a contemporaneous demand for immediate distribution. The district court found that a letter, dated February 1, 1984, executed by Orphan and addressed to L.M. Ridgeway and Murray Lovit, containing Orphan's resignation and claim for immediate distribution of profit sharing benefits, was delivered to Lovit on February 1, 1984. Lovit denied receipt of the letter and the demand for immediate disbursement of benefits under the Plan, but the district judge resolved this conflict in favor of Orphan. There is the testimony of Orphan and his wife to support this finding, and it may not be disturbed unless it is clearly erroneous. Fed.R.Civ.P. 52(a); see Anderson v. City of Bessemer City, N.C., 470 U.S. 564 (1985).
 
 
 20
 At the time Orphan resigned, Lawrence Ridgeway and Murray Lovit were the trustees under the Plan. Lovit testified that if Orphan had demanded immediate distribution of his Plan benefits at the time of his resignation, he would have been entitled to payment. The Plan in effect at the time of Orphan's resignation and demand for immediate distribution provided "When a Participant Terminates Service with Employer. The Participant may elect an immediate distribution of his vested account balance."
 
 
 21
 We agree with the district judge that the Plan in effect when the employee makes application for immediate distribution is controlling in determining any entitlements. See Denzer v. Purofied Down Prods. Corp. Profit-Sharing and Retirement Plan, 474 F.Supp. 773 (S.D.N.Y.1979); Taylor v. I.T.U. Negotiated Pension Plan, 463 F.Supp. 1255 (D.Md.1979).
 
 
 22
 Preemption has no place in this action. There is nothing to preempt. The plaintiff sought relief under the correct statute and in the proper forum. The confusion created by the "Breach of Contract" label is the culprit. The terms of the Plan are clear and the trial judge's finding of fact on the date of the demand for benefits is not clearly erroneous.
 
 
 23
 For the foregoing reasons we affirm.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 29 U.S.C. Sec. 1144 provides in part:
 (a) Supersedure; effective date
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.